Edith W. Bowler's husband, Dr. Bowler, obtained a loan from CIT Financial Services, Inc. ("CIT"), in the amount of $30,000 and secured it with a second mortgage on the Bowlers' jointly-owned home. Ms. Bowler's name and purported signature appear on the loan and mortgage documents. The evidence shows that a female posing as "Ms. Bowler" forged Ms. Bowler's signature on the loan documents. Neither the loan officer handling Dr. Bowler's loan for CIT nor the notary public who signed the acknowledgement witnessed the signature of the imposter. The loan officer did call a telephone number given to him by Dr. Bowler and ascertain that a person, who identified herself as Ms. Bowler, had signed and did understand the contents of the documents on which the signature "Edith W. Bowler" appeared. It is undisputed that the person to whom he talked was not Ms. Bowler.
In 1986, Ms. Bowler filed a multi-count complaint against CIT, Dr. Bowler, and others, claiming damages for fraud, negligence, wantonness, and violations of the federal Truth-in-Lending Act, and asking the court to declare the note and mortgage void. In her complaint, she alleged that her signatures on the loan documents were forgeries. The negligence and wantonness claims were submitted to the jury.
During the trial, CIT amended its answer to plead the defenses of ratification, estoppel, and laches. The jury returned a verdict in favor of Ms. Bowler and against CIT in the amount of $50,000 compensatory damages and against Dr. Bowler in the amount of $100,000 compensatory damages and $100,000 punitive damages. The trial court entered judgment on those verdicts. In addition, the trial court gave CIT a $50,000 judgment against Dr. Bowler on CIT's cross-claim. The trial court declared the note and mortgage void as to Ms. Bowler, and found that CIT had violated the Truth-in-Lending Act. After the trial court denied its motion for J.N.O.V. or, in the alternative, for new trial, CIT appealed to this Court. Dr. Bowler did not appeal. We affirm in part; reverse in part; and remand.
 I. Jury Claims
CIT contends that it is entitled to a judgment as a matter of law, or, alternatively, that it is entitled to a new trial on the ground that the trial court erred in refusing its written requested jury charge on ratification.
At the outset, we note that CIT was not entitled to a judgment notwithstanding the verdict. Guided by the scintilla rule, we find that there was sufficient evidence introduced to produce a conflict warranting a jury's consideration of the negligence claim. Bradford v. McGee, 534 So.2d 1076
(Ala. 1988). The jury specifically found that CIT was not guilty of wantonness. There was also a scintilla of evidence that Ms. Bowler ratified the mortgage, and the scintilla of evidence rule applies to affirmative defenses, as well as to a plaintiff's claims. McHugh v. Harrison, 266 Ala. 138,94 So.2d 756 (1957).
A ratification occurs when a principal retains the benefits resulting from his agent's unauthorized acts with knowledge of the material facts surrounding the transaction. TuskegeeInstitute v. May Refrigeration Co., 344 So.2d 156 (Ala. 1977); see Gray v. Great American Reserve Ins. Co.,495 So.2d 602, 607 (Ala. 1986); Cole v. Racetrac Petroleum,Inc., 466 So.2d 93 (Ala. 1985); Farmers GinnersCotton Oil Co. v. Hogan, 267 Ala. 248, 100 So.2d 761
(1957); see, also, Annot., 82 A.L.R.3d 613, 651, and Code 1975, § 7-3-404. The record shows that Ms. Bowler was at home when a real estate appraiser appraised the home for this second mortgage; that the loan proceeds were deposited into Dr. and Ms. Bowler's joint checking account; that Ms. Bowler discovered the loan documents and the second mortgage two or three months after Dr. Bowler closed the loan; that Ms. Bowler knew that substantially all of the *Page 6 
loan proceeds ($27,391.67) were deposited into this joint checking account; and that Ms. Bowler wrote several checks on this joint checking account after she was aware that the loan proceeds had been deposited into this account. Ms. Bowler was divorced from Dr. Bowler approximately 11 months after the loan was closed, and this second mortgage was an issue in the divorce, and the divorce judgment required Dr. Bowler to satisfy CIT's second mortgage. This evidence would establish at least a scintilla of evidence that Ms. Bowler ratified the mortgage. However, the trial court refused CIT's written requested jury charge on ratification and did not orally instruct the jury on the law of ratification. CIT made a timely objection to the trial court's refusal of this charge. "In a jury case a party is entitled to have its case tried to a jury that is given the appropriate standard by which to reach its decision." Kyle v. Selma Medical Center Hospital,534 So.2d 589 (Ala. 1988). A wrongful refusal of a requested jury instruction constitutes a ground for new trial. Matthews v.S.A. Martin Martin Motors, 394 So.2d 943 (Ala. 1981). A new trial was requested and one ground assigned therefor was the refusal to give the requested charge on ratification. The trial court in refusing to give the requested charge stated that ratification is not a defense to negligence or wantonness. The trial court is correct, and it was not error for it to refuse the requested charge on ratification, since only the claims on negligence and wantonness were submitted to the jury.
In Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987), we wrote:
 "Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust. Mid-Continent Refrigerator Co. v. Fulton Grocery, Inc., [503 So.2d 1222 (Ala. 1987)]."
Does the evidence clearly indicate that the jury verdict was wrong and unjust as to the amount of damages awarded Ms. Bowler against CIT? We are persuaded that it does not. We affirm the $50,000 jury verdict against CIT in favor of Ms. Bowler.
 II. Non-Jury Claims
Ms. Bowler alleged in her complaint that CIT violated the Truth-in-Lending Act by failing to disclose the terms of the credit transaction and her right of rescission and by failing to cancel the mortgage upon request. The trial court awarded her damages in an amount equal to the outstanding balance of the mortgage. We hold that Ms. Bowler was not entitled to damages under the Truth-in-Lending Act. The Truth-in-Lending Act applies only to consumer credit transactions and expressly exempts from its coverage extensions of credit primarily for business purposes. 15 U.S.C. § 1603(1);12 C.F.R. § 226.3(a); Sherrill v. Verde Capital Corp.,719 F.2d 364 (11th Cir. 1983). The undisputed evidence shows that Dr. Bowler executed the loan with CIT primarily for business purposes. The loan application reveals on its face that the purpose of the loan was to finance the opening of a private medical practice. There was also evidence indicating that, at the time of applying for the loan, Dr. Bowler requested that some of the proceeds be allocated toward paying off credit card debts. However, out of the $30,000 extended to Dr. Bowler by CIT, only $2,149.00 was applied to the credit card debts. Because Dr. Bowler entered the loan transaction with CIT primarily for a business purpose and not for a personal, family, or household purpose, it was a commercial loan and thus exempt from coverage of the Truth-in-Lending Act. Accordingly, the trial court erred in applying the Truth-in-Lending Act to the loan.
For the foregoing reasons, the judgment is affirmed as to the negligence claim and is reversed as to the Truth-in-Lending claim. *Page 7 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX and BEATTY, JJ., concur.
ALMON, J., concurs in the result.