Dennis Maciasz and Stephanie Maciasz, as individuals, and Dennis Maciasz, as father and next friend of Tina Maciasz, a deceased minor, appeal from a summary judgment entered in favor of Fireman's Fund Insurance Company ("Fireman's") and Chicago Insurance Company, interveners in an action between the Maciaszes and Christian Cheerleaders of America, Inc. ("CCA"). We affirm.
 I. Facts and Procedural History
On July 20, 2002, a van transporting members of the CCA staff was involved in a single-vehicle accident in St. Clair County. The van was traveling from a cheer-leading camp in Texas to a cheerleading camp in North Carolina. Tina Maciasz, a 17-year-old member of the CCA staff and a resident of Louisiana, died as a result of injuries she suffered in the accident.
In 2003, Dennis Maciasz and Stephanie Maciasz, as individuals, and Dennis Maciasz, as Tina's father and next friend, sued Ford Motor Company, Goodrich Corporation, Michelin North America, Inc., and fictitiously named defendants in the St. Clair Circuit Court, seeking to recover damages resulting from the accident. On July 12, 2004, the Maciaszes amended their complaint to add claims against CCA *Page 993 
alleging negligence and negligent entrustment of the van. On December 9, 2005, the Maciaszes added a claim of negligent supervision against CCA. CCA was the only defendant remaining when the case was set for trial.
On April 3, 2006, the trial court entered a consent judgment against CCA in the amount of $1,500,000. CCA, at the time of the accident, maintained a "Sports General Liability Policy-Occurrence Policy" ("the sports liability policy") that consisted of (1) a liability portion insured through Chicago Insurance Company, a subsidiary of Fireman's, and (2) an accident-medical portion insured through Hartford Insurance Company. CCA also maintained an automobile liability policy with Allstate Insurance Company at the time of the accident. The consent judgment states that Allstate agreed to pay $150,000 in complete satisfaction of any amounts it owes on CCA's automobile liability policy. The consent judgment further states:
 "[The Maciaszes] shall have the right to execute and collect said Judgement and prosecute all claims and causes of action owned by [CCA] against any and all Fireman's Fund Policies, including the `Sports General Liability Policy-Occurrence Policy' and all addendums and/or amendments thereto, or other policies providing coverage to [CCA]. [The Maciaszes] cannot execute or collect on the Allstate Policy, other than the Allstate payment."
On May 22, 2006, the trial court permitted Fireman's to intervene in the action between the Maciaszes and CCA.[1]
Fire-men's also challenged the consent judgment by filing a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the consent judgment to protect itself against the enforcement of the judgment or from prejudice in subsequent proceedings stemming from the consent judgment and by filing a Rule 60, Ala. R. Civ. P., motion for relief from the judgment insofar as it related to Fireman's. On September 26, 2006, the trial court stayed all proceedings related to Fireman's Rule 59 and Rule 60 motions pending resolution of the issue whether CCA's sports liability policy provided coverage for damages arising from the accident that gave rise to the Maciaszes' claims against CCA.
The sports liability policy issued by Fireman's subsidiary, Chicago Insurance, states that it is made and accepted subject to several different forms and endorsements, including CG 00 01 01 96; GLD-2065 (09/96); and GLE-8049 (08/99). Form CG 00 01 01 96, titled "Commercial General Liability Coverage Form" states:
 "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend the insured against any `suit' seeking those damages. However, we will have no duty to defend the insured against any `suit' seeking damages for `bodily injury' or `property damage' to which this insurance does not apply. We may at our discretion investigate any `occurrence' and settle any claim or `suit' that may result."
This form includes an automobile exclusion, which states that the insurance does not apply to: "`Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading' and `unloading.'" *Page 994 
Form GLD-2065 (09/96), titled "Extension of Declarations" states that "COVERAGE AFFORDED BY THIS POLICY IS SPECIFICALLY LIMITED TO THE SPORTS OR ACTIVITIES CLASSIFICATIONS) LISTED BELOW FOR WHICH AN ADVANCE PREMIUM IS SHOWN." (Capitalization in original.) Under the "Classification" column is a sub-heading "Sports Camps/Clinics." Under that subheading are two entries: "All approved sports activities included" and "Participant coverage for coaches is provided for team sports, camps/clinics only if covered by Primary Accident/Medical Policy."
Endorsement GLE-8049 (08/99), titled "Nationwide Amendatory Endorsement for Sports Associations" states "THIS ENDORSEMENT CHANGES THE POLICY." (Capitalization in original.) The endorsement further states under the coverage-limitation heading:
 "Liability coverage afforded by this policy is specifically limited to the Sports Classification(s) which have been scheduled, with an advance premium, on the EXTENSION OF DECLARATIONS of this policy and applies ONLY while covered, sponsored and supervised activities of the NAMED INSURED are taking place. Coverage also applies directly prior to and following such activities, provided that `participants' are under the direct supervision of the NAMED INSURED."
(Capitalization in original.)
On February 23, 2007, Fireman's and Chicago Insurance, jointly, and the Maciaszes moved for a summary judgment on the question whether the sports liability policy provided insurance coverage. After a hearing, the trial court entered a summary judgment in favor of Fireman's and Chicago Insurance.[2] The trial court's order states that North Carolina law should apply to determine the insurance-coverage question. The order then specifically states:
 "5. . . . [T]he central issue in the case [is] whether or not the sports general liability policy covers travel to and from camp [sites].
 "6. That it is the ruling of this court that it does not.
 "7. That the Sports General Liability Policy clearly sets out those activities covered under the policy, one of which is cheerleading `youth only.'
 "8. The Court finds that this language is explicit, the coverage is explicit, the policy is not ambiguous."
The Maciaszes then appealed to this Court.
 II. Standard of Review
"The standard by which this Court will review a motion for summary judgment is well established:
 "`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); § 12-21-12(d)[,] Ala. Code 1975. Evidence *Page 995 
is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
"`In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin,702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).'"
Payton v. Monsanto Co., 801 So.2d 829, 832-33
(Ala. 2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co.,742 So.2d 182, 184 (Ala. 1999)).
 III. Analysis
We apply North Carolina law[3] in determining whether the trial court properly ruled, as a matter of law, that the sports liability policy does not cover damages resulting from the vehicle accident that gave rise to the Maciaszes' claims against CCA.
The Maciaszes argue that the trial court incorrectly interpreted and applied North Carolina law to conclude that the sports liability policy was explicit and unambiguous. The Maciaszes assert that under North Carolina law, an insurance policy is ambiguous when "[a] reasonable reading of the insurance policy could produce either the reading offered by plaintiff or the reading offered by defendants . . . ."Scottsdale Ins. Co. v. Travelers Indent. Co.,152 N.C.App. 231, 234, 566 S.E.2d 748, 750 (2002). The Maciaszes rely on Scottsdale Insurance to argue that the sports liability policy is ambiguous because, they say, the automobile exclusion and the extension of declarations can reasonably be read so as to be in direct conflict.
In Scottsdale Insurance, several baseball players were injured in an automobile accident while traveling between baseball games. 152 N.C.App. at 232, 566 S.E.2d at 748. The insurer of the baseball team's sponsor sought a judgment declaring that the sponsor's commercial general liability policy did not cover damages arising from the automobile accident. Id. The policy contained an automobile exception and an endorsement that provided coverage for "activities necessary or incidental to the conduct of practice, exhibitions, scheduled or postseason games."152 N.C.App. at 233, 566 S.E.2d at 749. The Court of Appeals of North Carolina noted that "this endorsement expands the policy's coverage. The endorsement contains the clause `THIS ENDORSEMENT CHANGES THE POLICY.'" Id. (capitalization in original) (emphasis added).
The court found that the policy was ambiguous because the endorsement that expanded coverage to "activities necessary or incidental to the conduct of a scheduled game could reasonably be read as covering travel between games and therefore to directly conflict with the automobile exclusion in the policy.152 N.C.App. at 233-34, 566 S.E.2d at 749-50. Because an ambiguous policy must be construed in favor of the insured, the court held that the policy covered damages arising from the automobile accident. Id. The Maciaszes assert thatScottsdale Insurance is nearly indistinguishable from the present *Page 996 
case and that it requires reversal of the summary judgment in favor of Fireman's and Chicago Insurance.
Fireman's and Chicago Insurance contend that the phrase "[a]ll approved sports activities included" in the extension of declarations, CGL-2065 (09/96), in CCA's policy is critically different from the endorsement in Scottsdale Insurance
providing coverage for "activities necessary or incidentalto the conduct of [a scheduled activity]." (Emphasis added.) Fireman's and Chicago Insurance contend that the extension of declarations does not expand the scope of CCA's coverage but merely extends the same coverage "for injuries occurring while covered athletic programs are taking place — to campers and coaches who would not have otherwise been covered by the initial deposit premium paid by CCA for cheerleading camps. The agent who sold CCA the policy explained that because there was uncertainty as to the number of people attending camps, a "deposit" premium is collected, and the camp is thereafter required to inform the insurer of the number of attendees at the camp. An additional premium is then collected based on the number of attendees; therefore, the "extension of declarations" merely adds the participants in the camp to the policy. Thus, Fireman's and Chicago Insurance argue that the extension of declarations for "[a]ll approved sports activities" in the sports liability policy, unlike the endorsement in Scottsdale Insurance, does not expand coverage so as to bring it into conflict with the automobile exclusion in the policy.
We agree that Scottsdale Insurance is distinguishable from the present case. The Maciaszes improperly treat the coverage provided for in the extension of declarations as an endorsement expanding the scope of covered activities. Unlike the endorsement in Scottsdale Insurance, however, the extension of declarations in the sports liability policy does not state that it expands coverage; it does not even use the word "endorsement." Furthermore, the extension of declarations states that "COVERAGE AFFORDED BY THIS POLICY IS SPECIFICALLY LIMITED TO THE SPORTS OR ACTIVITIES CLASSIFICATION) LISTED BELOW. . . ." (Capitalization in original.) (Emphasis added.) Absent from CCA's policy is any language analogous to the reference to "activities necessary or incidental to the conduct of [a scheduled activity]" present inScottsdale Insurance, thereby justifying theScottsdale Insurance court's inclusion of transportation to or from the activity as within the scope of coverage of the policy.
Fireman's and Chicago Insurance contend that the present case is analogous to Builders Mutual Insurance Co. v. North MainConstruction, Ltd., 176 N.C.App. 83, 625 S.E.2d 622 (2006). In Builders Mutual Insurance, an insurer sought a judgment declaring that the automobile exclusion, identical to that found in the sports liability policy, in an employer's commercial general liability policy excluded coverage for claims of negligent hiring, supervision, and/or retention of a driver who was involved in an automobile accident.176 N.C.App. at 85-86, 625 S.E.2d at 623-24. The Court of Appeals of North Carolina noted that "[i]n determining whether an automobile exception applies, this Court looks to the actual causes of a given injury and considers whether a cause separate from the use of a vehicle resulted in those particular injuries."176 N.C.App. at 89, 625 S.E.2d at 625. The court held that because the "injuries could not have occurred in the absence of the use of the automobile," the automobile exclusion precluded coverage under the policy. Id. *Page 997 
In the present case, the injuries to Tina Maciasz, giving rise to the Maciaszes' claims, were clearly caused by the use of an automobile: therefore, the automobile exclusion in the sports liability policy precludes coverage under the policy. We further find no conflict between the automobile exclusion in the sports liability policy and the extension of declarations, which limits coverage to "[a]ll approved sports activities." The trial court correctly found that there was no coverage under the policy for damages arising from the automobile accident.
The Maciaszes also argue that the trial court erred in concluding that the sports liability policy was explicit and unambiguous because, they say, the lack of a definition in the policy of the phrase "[a]ll approved sports activities" creates an ambiguity that must be construed against Fireman's and Chicago Insurance, as drafters of the sports liability policy. Fireman's and Chicago Insurance contend that a definition of "(a]ll approved sports activities" is not needed because a plain reading of the terms "sport" and "activity" reveal that the phrase "approved sports activities" is not capable of more than one meaning. The Court of Appeals of North Carolina has held that "[i]nsurance contracts are construed according to the intent of the parties, and in the absence of ambiguity, we construe them by the plain, ordinary and accepted meaning of the language used." Integon Gen. Ins. Corp. v. UniversalUnderwriters Ins. Co., 100 N.C.App. 64, 68, 394 S.E.2d 209,211 (1990). We hold that the lack of a definition of "[a]ll approved sports activities" in the sports liability policy does not render the policy ambiguous. We reject the contention that travel to or from a venue for a sports activity reasonably constitutes "sports activities." As previously noted, coverage for travel could have been afforded by the use of a term such as "activities necessary or incidental to the conduct of [a scheduled activity]," as was present in the policy before the North Carolina Court of Appeals in ScottsdaleInsurance.
The Maciaszes further contend that the trial court's stated reasoning for entering a summary judgment in favor of Fireman's and Chicago Insurance was not based upon the automobile exclusion in the sports liability policy. Fireman's and Chicago Insurance dispute this contention. Even assuming that the summary judgment was not based on the automobile exclusion, as we explained in Liberty National Life Insurance Co. v.University of Alabama Health Services Foundation, P.C.,881 So.2d 1013, 1020 (Ala. 2003), "this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court."
The Maciaszes also argue that the summary judgment in favor of Fireman's and Chicago Insurance is due to be reversed because the court solely relied on the insurers' underwriting manual, which was not part of the insurance policy, to conclude that "covered activities" were defined in the policy as "cheerleading (youth only)." Fireman's and Chicago Insurance contend that this issue is not reviewable on appeal because the Maciaszes neither objected to the trial court's reference to the underwriting manual at the hearing on the motions for a summary judgment nor filed a Rule 59, Ala. R. Civ. P., motion raising the issue. Even assuming this issue is before us, the trial court's consideration of the underwriting policy, if error, is harmless because the unambiguous applicability of the automobile exclusion affords a separate and independent basis for affirmance of the summary judgment. See Rule 45, Ala. R.App. P. *Page 998 
 IV. Conclusion
The automobile exclusion in the sports liability policy issued by Chicago Insurance precludes coverage for damages from the automobile accident that gave rise to the Maciaszes' claims against CCA. We affirm the summary judgment in favor of Fireman's and Chicago Insurance.
AFFIRMED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.
[1] The record is unclear as to when Chicago Insurance intervened.
[2] The summary judgment in favor of Fireman's and Chicago Insurance mooted Fireman's pending and stayed Rule 59 and Rule 60 motions.
[3] Neither party challenges the trial court's conclusion that North Carolina law governs the construction of the sports liability policy.