THOMPSON, Presiding Judge.
Geanie Shannon Brown (“Geanie”) appeals from a summary judgment entered by the Tuscaloosa Circuit Court in favor of First Federal Bank (“First Federal”), Jerry Dewayne Brown (“Jerry”), and Donielle Eaton. For the reasons stated herein, we affirm the judgment in part, reverse it in *807 part, and remand the cause for further proceedings.
The trial court resolved this action by a summary judgment; therefore, we consider the evidence of record in the light most favorable to Geanie, the nonmovant, resolving all disputed issues of material fact in Geanie’s favor. See Maciasz v. Fireman’s Fund Ins. Co., 988 So.2d 991, 994-95 (Ala.2008). Our consideration of the record under that standard reveals the following pertinent facts. Geanie was married to Jerry. At the times relevant to this action, First Federal employed Jerry as a loan officer and employed Eaton as a commercial-loan processor. Eaton was a notary public.
Geanie and Jerry purchased a house (“the marital residence”) in 2004. They took out a mortgage on the marital residence, and that residence secured an indebtedness of $208,000. On November 21, 2005, Jerry, without Geanie’s knowledge, entered into an agreement with First Federal whereby First Federal extended Jerry a home-equity line of credit with a limit of $30,000. Jerry executed a mortgage on the marital residence securing that line of credit (“the November 2005 mortgage”), and he forged Geanie’s signature on that mortgage.[1] Subsequently, Eaton notarized Jerry’s and Geanie’s signatures on the mortgage.
First Federal issued blank checks to Jerry on the line of credit. The checks listed the loan number of the line of credit and indicated that they were to be drawn on an account at First Federal. Geanie used the first check drawn on the line of credit to pay for interior decorating. She filled out the check, and Jerry signed it. She later testified that she did not realize that the check she had used to pay the decorator was drawn on the line of credit Jerry had established; she stated that she believed the parties had an account at First Federal from which proceeds from the sale of their previous house had been deposited.
In January 2006, without Geanie’s knowledge, Jerry entered into an agreement with First Federal for the establishment of a second line of credit with a limit of $62,000, the proceeds of which were used to pay off the first line of credit. Jerry executed a mortgage on the marital residence in favor of First Federal to secure the line of credit (“the January 2006 mortgage”). Again, he forged Geanie’s signature on the mortgage. Eaton subsequently notarized Jerry’s and Geanie’s signatures.
In 2007, Geanie filed an action for a divorce from Jerry. Sometime between March and June of 2008, while the divorce action was pending, she learned of the November 2005 and the January 2006 mortgages for the first time. In July 2008, Jerry and Geanie reconciled, and Geanie dismissed the divorce action. In December 2008, Jerry and Geanie refinanced the debts secured by the marital residence. As part of the refinance, they consolidated the debt associated with the existing line of credit with their other mortgage debt into a single debt secured by the marital residence. Also as part of the refinance, they received proceeds of approximately $10,000, which were deposited into a checking account primarily used by Geanie. Geanie testified that those funds were used to pay household bills. In *808 April 2008, First Federal recorded a cancellation of the November 2005 mortgage; in December 2008, First Federal recorded a release of the January 2006 mortgage.
In August 2009, Geanie filed a second action for a divorce from Jerry. On September 18, 2009, she filed the present action against First Federal, Jerry, and Eaton (hereinafter collectively referred to as “the defendants”). Geanie alleged that the defendants had wrongfully executed and recorded the November 2005 and the January 2006 mortgages and that First Federal and Eaton had “actively participated in securing the said mortgages with [Geanie]’s forged signature contained thereon and with knowledge of Jerry’s intent to suppress or conceal from [Geanie] the true facts concerning those documents and the related transactions.” Although she did not separately enumerate her claims against the defendants in her complaint, it appears from the complaint, as well as from subsequent filings and her appellate briefs, that Geanie asserted claims of negligence and fraudulent suppression against Eaton for which she asserted First Federal was vicariously liable; claims of negligence, wantonness, and fraudulent suppression against Jerry; claims of negligence, wantonness, suppression, and negligent and wanton supervision against First Federal; and a claim of conspiracy against all the defendants.
The defendants filed a motion for a summary judgment as to all of Geanie’s claims, raising a host of arguments. Among other things, they argued that Geanie had authorized Jerry to execute the November 2005 and January 2006 mortgages on her behalf and that he had not acted wrongfully in so doing. As to the claim of suppression, the defendants argued that they did not owe a duty to disclose any information to Geanie, that there was no evidence indicating that they had failed to disclose information to Geanie, that Geanie had neither acted to her detriment nor relied on an incomplete set of facts, and that Geanie had not been injured by any alleged fraudulent suppression by the defendants. In addition, they argued that Geanie was on notice of the information she claimed they had suppressed because she had filled out the first check drawn on the original line of credit; because she had received several documents from her property-insurance carrier indicating that there were two mortgages on the marital residence; because a bank statement relating to the checking account Jerry primarily used but to which Geanie had access showed that a check for $13,352 had been drawn on the account and the check was used to pay down the second line of credit; and because the November 2005 and January 2006 mortgages had been properly recorded. As to the claims against Eaton, the defendants argued that she had used reasonable care in performing her duties and that she had had a reasonable belief that the mortgages had been properly executed by Jerry and Geanie. The defendants argued that Geanie had not suffered any injury because, among other things, she had not been obligated on the lines of credit, she never owed any money to First Federal until she voluntarily refinanced the marital residence in December 2008, and any mental anguish she had suffered was attributable to the two divorce actions she had filed against Jerry, not to any actions of the defendants giving rise to the present action. The defendants argued that all of Geanie’s claims were barred by a two-year statute of limitations because her claims accrued at the time of the execution and notarization of the mortgages at issue, which occurred more than three years before she filed the present action. They argued that there was no evidence indicating that the defendants had suppressed or concealed her causes of action *809 so as to permit a tolling of the statute of limitations pursuant to § 6-3-2, Ala. Code 1975. Finally, the defendants contended that Geanie had ratified the debt created by the lines of credit when she voluntarily agreed to refinance the marital residence.
In response to the summary-judgment motion, Geanie argued that there was a genuine issue of material fact regarding whether she had authorized Jerry to sign her name to the mortgages at issue; she presented evidence in the form of her deposition testimony indicating that she had never had any conversations with Jerry regarding the lines of credit he established in late 2005 and early 2006. She stated that the check she had written to the interior decorator that was drawn on the original line of credit did not indicate on its face that it was drawn on a line of credit and that she had thought it was drawn on an account that contained proceeds from the sale of Jerry’s and her prior residence. She argued that there was substantial evidence indicating that Jerry had acted negligently and wantonly in forging her name to the mortgages securing the lines of credit, that Eaton had negligently violated her duties as a notary by failing to take steps to ascertain that Geanie’s signature was genuine, and that First Federal had negligently supervised Eaton. Geanie argued that she had agreed to refinance the marital residence in December 2008 under duress because Jerry had led her to believe that, unless they refinanced the house, it would be subject to foreclosure. Geanie argued that the defendants’ actions had caused her damage by reducing her equity in the marital residence and by causing her mental anguish. Finally, Geanie argued that her claims were not barred by the two-year statute of limitations because the defendants had fraudulently suppressed from her the existence of the mortgages and because Jerry, as her husband, had had a duty to disclose to her the existence of the mortgages. She argued that she did not have notice of the mortgages until sometime between March and June 2008 and, as a result, that her causes of action were tolled until that time pursuant to § 6-2-3, Ala.Code 1975. Geanie also asserted that her wantonness claims were subject to a six-year, rather than a two-year, statute of limitations.
In addition to her response to the summary-judgment motion, Geanie filed a motion pursuant to Rule 56(f), Ala. R. Civ. P., in which she argued that the trial court should postpone consideration of, or deny, the summary-judgment motion until additional discovery could be completed. She stated that she had been unable to complete Jerry’s deposition because he had invoked his constitutional privilege against self-incrimination and that she had been unable to take the deposition of the corporate representative of First Federal because its attorney had improperly objected to questions her counsel had asked during the deposition. Geanie stated that she needed to complete Jerry’s deposition so that she could obtain evidence that would rebut the defendants’ contention that she had knowledge of and consented to the lines of credit Jerry had obtained from First Federal. She stated that she needed to take the deposition of First Federal’s corporate representative to obtain information concerning First Federal’s supervision of its employees and information regarding First Federal’s loan procedures and whether those procedures were followed for the lines of credit and related mortgages giving rise to the action. Gean-ie supported her motion with an affidavit from her attorney.
Geanie also filed a motion to strike certain documents from the defendants’ summary-judgment submission, including the contracts Jerry had executed regarding the two lines of credit, a copy of a check *810 for $13,352 purporting to have been drawn on the checking account Jerry primarily used, an account statement for that account, and various documents that appeared to relate to property insurance on the marital residence. She argued that the defendants had not properly authenticated those documents.
The trial court held a hearing on the defendants’ summary-judgment motion, after which, on May 3, 2011, it granted the motion and entered a summary judgment in the defendants’ favor. In so doing, the trial court implicitly denied Geanie’s pending discovery motion and motion to strike. See Tell v. Terex Corp., 962 So.2d 174, 182 (Ala.2007) (entry of summary judgment constituted implicit denial of pending motion to compel discovery). Geanie filed a timely appeal to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.'
The standard by which this court reviews a summary judgment is well settled:
“ ‘ “To grant [a summary-judgment] motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present ‘substantial evidence’ creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12 — 21—12(d)[,] Ala.Code 1975. Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘ “In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the non-movant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).” ’
“Payton v. Monsanto Co., 801 So.2d 829, 832-33 (Ala.2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999)).”
Maciasz v. Fireman’s Fund Ins. Co., 988 So.2d at 994-95.
Geanie contends that the trial court erred when it implicitly denied her motion, filed pursuant to Rule 56(f), Ala. R. Civ. P., to deny or postpone consideration of the defendants’ summary-judgment motion pending her completion of certain discovery. Specifically, she argues that she was entitled to obtain the deposition of First Federal’s corporate representative, which would provide information regarding the supervision of First Federal’s employees and whether First Federal followed its loan procedures with regard to the lines of credit and mortgages at issue.
Rule 56(f) provides:
“Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party’s opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.”
*811 We conclude that the trial court’s denial of Geanie’s Rule 56(f) motion constituted, at most, harmless error. As discussed herein, Geanie’s claims against First Federal were barred by the two-year statute of limitations, and there is no indication that the information she sought by deposing First Federal’s corporate representative would have had any bearing on that conclusion.
Rule 45, Ala. R.App. P., provides that
“[n]o judgment may be reversed or set aside ... for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Because Geanie has failed to demonstrate that obtaining the information she sought in her Rule 56(f) motion would affect the trial court’s summary judgment and this court’s disposition of her appeal of that summary judgment, we find no basis on which to reverse the trial court’s judgment as to this issue.
Geanie also argues that the trial court improperly considered several documents the defendants submitted in support of their summary-judgment motion and as to which she had filed a motion to strike on the basis that the documents were unauthenticated. Having reviewed those documents, we conclude that, even if they were unauthenticated so that the trial court should not have considered them in resolving the summary-judgment motion, our de novo review of the summary judgment without the benefit of those documents shows that the summary judgment was proper as to all of Geanie’s claims except one. As to the one claim for which we find that summary judgment was improper, even consideration of all the documents to which Geanie objected would not have provided a basis on which to enter the summary judgment. Thus, the trial court’s failure to strike the documents to which Geanie objected was, at most, harmless error for which we will not reverse the trial court’s judgment. See Rule 45, Ala. R.App. P.
We turn now to the merits of the summary judgment. Because the trial court did not state the reason for its summary judgment, to obtain a reversal Geanie has the burden of establishing that none of the grounds asserted by the defendants in support of the summary-judgment motion would support the entry of the judgment. See Fogarty v. Southworth, 953 So.2d 1225, 1232 (Ala.2006) (“When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court’s order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue in the appellant’s principal brief constitutes a waiver -with respect to the issue.”). We conclude that, except as to her claim of wantonness against Jerry, Geanie has failed to meet that burden.
The defendants argued to the trial court and argue on appeal that Geanie’s claim of negligence against Eaton was barred by the two-year statute of limitations because Eaton’s notarization of the November 2005 and January 2006 mortgages had occurred, and Geanie’s claim against Eaton had therefore accrued, more than two years before Geanie filed her action. Geanie argues on appeal that the limitations period on her action was tolled by operation of § 6-2-3. That section provides:
“In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the *812 fact constituting the fraud, after which he must have two years within which to prosecute his action.”
Although § 6-2-3 speaks in terms of actions asserting fraud rather than other tort claims, our courts have recognized that § 6-2-3 tolls the statute of limitations for any claims that are fraudulently concealed or suppressed from a plaintiff. See DGB, LLC v. Hinds, 55 So.3d 218, 224-26 (Ala.2010). Section 6-5-102, Ala.Code 1975, provides that “[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud.” However, “[i]n the absence of a confidential relationship, [there is] no duty imposed by law obligating an alleged tort feasor to make known to one possibly injured by his acts the existence of a possible cause of action.” Tonsmeire v. Tonsmeire, 285 Ala. 454, 458, 233 So.2d 465, 468 (1970).
Although Geanie argues generally that the defendants suppressed from her facts that would have led to her discovery of her causes of action, her specific arguments relate solely to First Federal and Jerry. She does not demonstrate, or even attempt to demonstrate, that Eaton was under a duty to disclose any information that would have led to her discovery of her potential causes of action or that Eaton fraudulently suppressed that information. As a result, we conclude that Geanie has failed to demonstrate that her negligence claim against Eaton was tolled by § 6-2-3 such that summary judgment was improper as to that claim.
For the same reason, we conclude that summary judgment was properly entered as to Geanie’s claims of negligence and negligent supervision against First Federal. Geanie argues on appeal that First Federal had an obligation to disclose to her, at the time she entered into the December 2008 refinancing of the marital residence, that she was not liable for the repayment of the existing home-equity line of credit Jerry had obtained from First Federal. Geanie is making this argument for the first time on appeal; she never argued to the trial court that First Federal was obligated to make any disclosure to her regarding the legal effect of Jerry’s home-equity line of credit at the time of the December 2008 refinance. Thus, we cannot consider that argument. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate c]ourt cannot consider arguments raised for the first time on appeal; rather, [the appellate court’s] review is restricted to the evidence and arguments considered by the trial court.”). Furthermore, Geanie did not state a claim against First Federal related to the refinance; instead, her claims against First Federal relate to the initial transactions whereby Jerry created the lines of credit and forged her name to the mortgages securing the lines of credit. Thus, the duty she claims First Federal had to disclose information to her regarding the lines of credit did not arise, according to her, until the time of the refinance in December 2008, at a time when she was already on notice of Jerry’s forgery of her name on the mortgages and, as a result, already on notice of her potential claims against First Federal. As a result, we conclude that Geanie has failed to demonstrate that the tolling provisions of § 6-2-3 apply to her negligence claims against First Federal.
Because Geanie has failed to demonstrate that First Federal and Eaton owed her a duty of disclosure as to any of the facts giving rise to her claims, we conclude that Geanie has also failed to demonstrate that the trial court erred in entering a summary judgment as to Geanie’s fraudulent-suppression claims against Eaton and First Federal.
*813 We turn now to Geanie’s wantonness and wanton-failure-to-supervise claims against First Federal. The defendants contended in the trial court that, despite some caselaw indicating that wantonness claims are subject to the six-year statute of limitations for trespasses to the person or liberty set forth in § 6-2-34(1), Ala. Code 1975, see, e.g., McKenzie v. Killian, 887 So.2d 861, 870 (Ala.2004), overruled by Ex parte Capstone Building Corp., [Ms. 1090966, June 3, 2011] — So.3d -, - (Ala.2011), Geanie’s wantonness claims were subject to the general two-year statute of limitations applicable to “[a]ll actions for any injury to the person or rights of another not arising from contract” set forth in § 6-2-38(1), Ala.Code 1975, because her claims did not involve trespass to the person or liberty. Relying on McKenzie, Geanie argued to the trial court that her wantonness claims were subject to a six-year statute of limitations. On appeal, Geanie does not argue that a six-year statute of limitations applies to her wantonness claims; instead, the only argument she makes that her claims are saved from the application of the statute of limitations is her contention that her claims were tolled by operation of § 6-2-3. However, as with her other claims against First Federal, she has failed to demonstrate that First Federal failed to provide her with information related to her wantonness claims that it was under a duty to provide.
With regard to Geanie’s claims against Jerry, however, we conclude that there is a question of fact regarding whether § 6-2-3 tolled the statute of limitations. Unlike with First Federal and Eaton, Geanie has demonstrated that Jerry, who was her husband at the time he created the lines of credit and forged her name on the mortgages securing the lines of credit, had a duty to disclose to her the facts underlying her claims against him. See § 6-5-102, Ala.Code 1975 (stating that a duty to communicate facts can arise from the confidential relationship of the parties), and Tonsmeire v. Tonsmeire, 285 Ala. at 458, 233 So.2d at 467 (“Ordinarily the relation of husband and wife is a status calling for the exercise of utmost confidence in one for the other. Love, affection, and welfare of the family usually [ejnsure this confidential relationship.”).[2] The record contains substantial evidence that, when viewed in the light most favorable to Gean-ie, indicates that, despite his duty to do so, Jerry failed to disclose the facts relating to his forgery of Geanie’s signature on the November 2005 and the January 2006 mortgages. The record also contains evidence indicating that Geanie did not learn of the mortgages containing her forged signature until sometime between March and June 2008, well within two years of when she filed her action.
The defendants argue that, despite her testimony that she did not learn of the mortgages until 2008, Geanie was in possession of, and had knowledge of, documents before 2008 that, if she had read, would have put her on notice of the existence of the forged mortgages. We con- *814 elude that questions of fact prevent any such finding for summary-judgment purposes.
For example, the defendants contend that in 2005 and 2006 Geanie received several documents'from Jerry’s and her property-insurance company indicating that there were multiple mortgages on the marital residence. However, although Geanie testified that she had seen “mailings” from the company and that she may have seen one unspecified document from the company, there is no evidence indicating that any documents she had actually seen from the insurance company contained any information regarding the mortgages on the marital residence.
The defendants also point out that Gean-ie prepared the first check drawn on the November 2005 line of credit. However, the only information relating to the line of credit contained on that check was an account number and First Federal’s name; the face of the check did not indicate that it was drawn on a line of credit. Geanie testified that she did not know that the check was drawn on the line of credit; instead, she testified that she thought it was drawn on an account she believed Jerry had established at First Federal and into which the proceeds from the sale of their previous house had been deposited.
The defendants argue that a statement for a bank account Jerry primarily used, but to which Geanie had access, indicated that a withdrawal was made on March 26, 2007, for $13,352 and that if Geanie had reviewed that statement and investigated the withdrawal, she would have learned that it had been used to pay debt on the second line of credit. The defendants rely on § 7-4-406, Ala.Code 1975, subsection (c) of which provides:
“If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.”
Although § 7-4-406 “addresses the necessity of a bank customer’s timely reviewing account statements and notifying the bank of problems with an account,” Brannon v. BankTrust, Inc., 50 So.3d 397, 401 n. 5 (Ala.2010), we do not view the provisions of that section as establishing that a bank customer who fails to review his or her bank-account statement is deemed, as to third parties, to have constructive notice of the items contained in the statement.
Considering the evidence in the light most favorable to Geanie, and drawing all reasonable inferences in her favor, we conclude that questions of fact exist as to whether Geanie saw several of the above-noted documents and whether, as to the ones she did see, she was adequately apprised of facts from which she could have discovered the existence of the mortgages containing her forged signature.
The defendants also assert that because the mortgages were recorded, Gean-ie is deemed to have had constructive notice of the existence of those mortgages at the time of recordation, thus commencing the running of the statute of limitations. They rely on § 35-4-51, Ala.Code 1975, which, in relevant part, provides:
“Except as may be otherwise provided by the Uniform Commercial Code, all deeds, mortgages, deeds of trust, bills of sale, contracts or other documents pur *815 porting to convey any right, title, easement, or interest in any real estate or personal property ..., when executed in accordance with law, shall be admitted to record in the office of the probate judge of any county. Their filing for registration shall constitute notice of their contents.”
In Pittman v. Pittman, 247 Ala. 458, 25 So.2d 26 (1945), a party claiming a rever-sionary interest in certain real property asserted that the recording of a mortgage and deed evidencing his title in the property had put certain individuals from whom he had purported to purchase his interest on notice of his claim. Our supreme court rejected the party’s argument, describing the effect of the predecessor statute to § 85-4-51 as follows:
“The recording statutes, as constructive notice (Code 1940, Title 47, §§ 95 and 102), have no application. The notice arising thereunder applies only to those whose duty it is to search the record and no such duty devolved upon the complainants. 66 C.J. 1137, § 971, 1187, § 1042.
“Generally, the constructive notice designed by these statutes purposes to affect subsequent parties and not those antecedent in chain of title and ‘to protect innocent purchasers and creditors without notice, by preventing prejudice to them from prior unrecorded conveyances, made by those under whom they claim.’ Gimon v. Davis, 36 Ala. 589, 593 [ (1860) ].”
247 Ala. at 462, 25 So.2d at 29. Similarly, in the present case, Geanie’s interest in the property against which the mortgages were taken preexisted the creation of the mortgages; thus, the recording of those mortgages did not provide constructive notice to Geanie of their existence under § 35-4-51.
The defendants also rely on § 35-4-90, Ala.Code 1975, which provides, in relevant part:
“(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.”
Regarding § 35-4-90, our supreme court has written:
“Under Ala.Code 1975, § 35-4-90, the proper recordation of an instrument constitutes ‘conclusive notice to all the world of everything that appears from the face’ of the instrument. Christopher v. Shockley, 199 Ala. 681, 682, 75 So. 158, 158 (1917). Thus, purchasers of real estate are ‘presumed to have examined the title records and knowledge of the contents of those records is imputed [to them].’ Walker v. Wilson, 469 So.2d 580, 582 (Ala.1985) (quoting J.H. Morris, Inc. v. Indian Hill[s 1 Inc., 282 Ala. 443, 212 So.2d 831 (1968)).”
Haines v. Tanning, 579 So.2d 1308, 1310 (Ala.1991). However, the full passage from Christopher, only a portion of which the Haines court quoted, reads: “So far as notice to subsequent purchasers is concerned, the only duty resting upon a mortgagee is the due registration of the mortgage in the office of the probate judge, which is conclusive notice to all the world of everything that appears from the face of the mortgage.” Christopher v. Shockley, 199 Ala. 681, 682, 75 So. 158, 158 (1917) (emphasis added). We conclude that the constructive notice provided by § 35-4-90 extends to those who, like subsequent purchasers, are under a duty to search the chain of title for claims against a parcel of *816 property but that it does not extend to those who, like Geanie, have an antecedent claim to the property at issue and therefore have no reason to search for subsequently arising claims to the property. See, generally, Pierce v. Rwmmell, 535 So.2d 594, 597 (Ala.1988) (holding that recording of an instrument provided constructive notice to subsequent purchasers, not to those with an interest antecedent to the making of the instrument).
Although we conclude that the statute of limitations does not bar Geanie’s claims of negligence, wantonness, and fraudulent suppression against Jerry, we nonetheless conclude that summary judgment was properly entered as to Geanie’s fraudulent-suppression claim on a separate ground. “The elements of a cause of action for fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.” Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala.1996).
Geanie stated in answer to an interrogatory that, had she known about the forged mortgages, she would have “taken action to protect [her] equity in [the marital residence] and to prevent ... Jerry ... from wasting the funds acquired from the two mortgage transactions.” However, Geanie has presented no evidence of what specific actions she would have taken had she known earlier about the forged mortgages. Instead, the evidence reflects that, once she did know of the facts relating to the creation of the lines of credit and the mortgages securing them, Geanie took no actions whatsoever to protect whatever interest she may have had at stake. She has presented no evidence indicating that she incurred any debt associated with the lines of credit until she refinanced the marital home in December 2008, at least six months after she had learned of the information she asserts was suppressed from her. Thus, she has failed to demonstrate that any actions or failures to act on her part brought on by the suppression of information related to the establishment of the lines of credit and the associated mortgages resulted in an injury to her. As a result, we conclude that summary judgment was appropriate as to her fraudulent-suppression claim against Jerry.
Regarding Geanie’s remaining claims against Jerry, negligence and wantonness, the defendants asserted in the trial court and reiterate on appeal that Geanie was not damaged by any of their actions. Geanie responded in the trial court, and argues on appeal, that the defendants’ actions impaired her equity in the marital residence. However, as just noted, Geanie produced no evidence indicating that she incurred any debt as a result of the lines of credit Jerry created. Although Geanie argues that, before the December 2008 refinance, the January 2006 mortgage encumbered her interest in the marital residence, she asserted to the trial court that that mortgage was void because she did not sign it. See § 6-10-3, Ala.Code 1975, and Sims v. Cox, 611 So.2d 339, 340-41 (Ala. 1992). There is no indication that Geanie made any effort to have the January 2006 mortgage canceled; instead, Geanie voluntarily refinanced the marital residence in December 2008 and assumed liability for the debt secured by that mortgage. Having taken no action to protect her interests, despite her knowledge of facts that would demonstrate the invalidity of the 2006 mortgage, we fail to see how Geanie’s voluntary assumption of the debt secured by the mortgage was caused by any action on the part of any of the defendants, and, thus, we fail to see how her interest in the marital residence was impaired or other *817 wise harmed by any action's of the defendants.
Geanie argues that her agreement to refinance the marital residence and thereby assume joint liability for the debt associated with the lines of credit was not voluntary; she argues that she made that decision under economic duress. Specifically, she contends that she was left with no choice but to enter into the refinance because Jerry had told her that, because of problems in the housing market, he might lose his job and they needed to lower the payment on the debts secured by the marital residence so that, if he did lose his job, they could continue making their monthly payments on those debts. Thus, Geanie argues, she was faced with the proposition of refinancing the marital residence or potentially losing it.
“ ‘[T]o demonstrate a prima fa-cie case of economic duress, a party must show “(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; (3) the absence of any reasonable alternative to the terms presented by the wrongdoer.” ’ ” Penick v. Most Worshipful Prince Hall Grand Lodge F & AM of Alabama, Inc., 46 So.3d 416, 431 (Ala.2010) (quoting Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama, 991 So.2d 701, 707 (Ala.2008), quoting in turn International Paper Co. v. Whilden, 469 So.2d 560, 562 (Ala.1985)). “Economic duress is not proved merely by showing a wrongful act. In addition, the victim must show that he had no reasonable alternative but to agree to the other party’s terms or face serious financial hardship.” International Paper Co. v. Whilden, 469 So.2d at 563.
We cannot conclude that Geanie entered the December 2008 refinance under duress. There was no certainty that if she had refused to refinance the marital residence in such a way as to become jointly liable for the debt associated with the lines of credit that Jerry and she would have lost the marital residence. More importantly, reasonable alternatives to assuming liability for Jerry’s lines-of-credit debt were available to Geanie. For example, as already discussed, at the time of the December 2008 refinance, Geanie was on notice of facts that should have led her to conclude that she was not liable on the existing home-equity line of credit and that the mortgage securing that line of credit was not valid; Geanie could have sought to have the mortgage associated with that line of credit canceled as void. As a result, we cannot conclude that Gean-ie was left with no alternative but to refinance the debt on the marital residence and assume responsibility for the debt associated with the lines of credit or face losing her home. Therefore, we cannot conclude that the conditions necessary for a finding of economic duress are present in this case.
The only other damages that Geanie claims in this case for which there is any evidence is her assertion that the defendants’ actions caused her mental anguish. In response to an interrogatory from the defendants asking what mental anguish and emotional distress she had suffered as described in her complaint, Geanie stated:
“I have suffered and continued to suffer the following: difficulty sleeping; constant worrying about money; short temper; crying at work; and guilt and shame about being unable to obtain loans and having to rely on my parents to pay many of my bills. I also feel guilty about not being able to work as much as I did in the past at my family’s business (Northport City Café).”
She also stated in a separate response that she had “suffered weight loss as a result of stress related to the defendants’ actions.”
*818 Damages for mental anguish are not recoverable for negligence except when the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct. See Birmingham Coal & Coke Co. v. Johnson, 10 So.3d 993, 999 (Ala.2008). Here, Geanie has not alleged a physical injury or risk of physical injury brought on by Jerry’s conduct. As a result, Geanie’s negligence claim against Jerry is not supported by a cognizable claim for damages, and summary judgment was therefore appropriate as to that claim.
As to her wantonness claim against Jerry, however, damages for mental anguish are recoverable. Indeed, “[i]t is well settled that a plaintiff may recover compensatory damages for mental anguish, even when mental anguish is the only injury visited upon the plaintiff.” George H. Lanier Mem’l Hosp. v. Andrews, 901 So.2d 714, 725 (Ala.2004). In supporting a claim for mental-anguish damages, “[a] plaintiff is required only to present some evidence of mental anguish, and once the plaintiff has done so the question whether the plaintiff has suffered mental anguish and, if so, the question of how much compensation the plaintiff is entitled to for the mental anguish are questions for the jury.” Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 178 (Ala. 2000).
In the present case, Geanie has set forth a basis for the recovery of mental-anguish damages, and her interrogatory answer provides some evidence indicating that she did, in fact, suffer such damages. Although the defendants argue that any mental anguish from which Geanie suffered derived from other sources or was nonexistent, the evidence on which they rely in this regard demonstrates, at most, a fact question as to the basis of Geanie’s mental anguish. The evidence does not show that, as a matter of law, Geanie suffered no mental anguish as a result of Jerry’s actions.
As a related issue, the defendants argued to the trial court, and argue on appeal, that they could not be liable to Geanie because she had ratified their alleged wrongdoing by her actions in refinancing the marital residence in December 2008 and by her retention of some of the benefits of the lines of credit Jerry had taken out. However, at least as to the wantonness claim against Jerry, we agree with Geanie that ratification does not provide such a defense. In CIT Financial Services, Inc. v. Bowler, 537 So.2d 4 (Ala. 1988), a case involving facts similar to the present case, our supreme court discussed the defense of ratification and held that, although there was evidence the plaintiff in that case had ratified the forgery of her signature on certain loan documents, such ratification was not a defense to the plaintiffs negligence and wantonness claims against the lending company that had extended the loan. The court wrote:
“[T]he trial court refused CIT’s written requested jury charge on ratification and did not orally instruct the jury on the law of ratification. CIT made a timely objection to the trial court’s refusal of this charge.... A new trial was requested and one ground assigned therefor was the refusal to give the requested charge on ratification. The trial court in refusing to give the requested charge stated that ratification is not a defense to negligence or wantonness. The trial court is correct, and it was not error for it to refuse the requested charge on ratification, since only the claims on negligence and wantonness were submitted to the jury.”
CIT Fin. Services, Inc., 537 So.2d at 6. Based on the above holding in CIT Finan *819 cial Services, Inc., we conclude that, even if Geanie, by her actions or inactions, ratified the transactions giving rise to the lines of credit and related mortgages, such ratification does not constitute a defense to Jerry’s potential tort liability to her on her wantonness claim.
As a final matter bearing on the merits of Geanie’s claims, we consider whether she has established a prima facie case of wantonness against Jerry. The defendants argue that she has not; we agree with Geanie, however, that, at least as to this remaining claim, there is a genuine issue of material fact that precluded summary judgment. About wantonness, our supreme court has written:
“‘Wantonness’ has been defined by this Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala. 1994). To constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone. Joseph v. Staggs, 519 So.2d 952, 954 (Ala.1988). Also, it is not essential that the actor should have entertained a specific design or intent to injure the plaintiff, only that the actor is ‘conscious’ that injury will likely or probably result from his actions. Id. ‘Conscious’ has been defined as ‘ “perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception”’; ‘“having an awareness of one’s own existence, sensations, and thoughts, and of one’s environment; capable of complex response to environment; deliberate.”’ Berry v. Fife, 590 So.2d 884, 885 (Ala.1991) (quoting Webster’s New Collegiate Dictionary 239 (1981) and The American Heritage Dictionary of the English Language 283 (1969), respectively).”
Ex parte Essary, 992 So.2d 5, 9 (Ala.2007).
Considering the evidence in the light most favorable to Geanie, we conclude that a reasonable jury could find that Jerry executed the home-equity lines of credit and, in so doing, forged Geanie’s name to the mortgages necessary to secure the debts created thereby without her knowledge. Furthermore, a reasonable jury could find that Jerry took these actions knowing that there was a substantial likelihood that his actions would cause some type of legal injury to Geanie, if not financially then, at the very least, mentally and emotionally. We likewise conclude that a reasonable jury could find that Jerry owed a duty to Geanie not to forge her name to the mortgages and that he knowingly breached that duty. Thus, we conclude that, because substantial evidence supports Geanie’s wantonness claim against Jerry, and because the statute of limitations and other arguments asserted by the defendants do not bar that claim, the trial court erred to reversal when it entered a summary judgment as to that claim.
Finally, Geanie asserted a claim of conspiracy against all the defendants. She does not address that claim on appeal. As a result, she has waived any argument that the trial court erred when it entered a summary judgment as to that claim. See Fogarty, 953 So.2d at 1232.
Based on the foregoing, we reverse the summary judgment as to Geanie’s wantonness claim against Jerry, we affirm the balance of the summary judgment, and we remand the cause to the trial court for further proceedings.
*820 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMAS and MOORE, JJ., concur.
PITTMAN, J., concurs in part and concurs in the result, with writing.
BRYAN, J., concurs in the result, without writing.

. Jerry asserts that Geanie knew about and assented to the line of credit and that she authorized him to sign her name to the mortgage. Geanie disputes these assertions, and, as stated above, the standard by which this court reviews the trial court’s summary judgment requires that this court consider the evidence in the light most favorable to Gean-ie.

. The defendants point out that, in Tonsmeire, our supreme court held that the husband was not under a duty to disclose to his wife the existence of facts giving rise to a claim of libel against him by her because the husband and the wife were estranged and no longer living together. However, there is no indication in the present case that Jerry and Geanie were estranged during the times relevant to Jerry’s forging of Geanie’s signature to the mortgages at issue.