THOMAS, Judge.
These appeals, which were consolidated by this court ex mero mot%, arise out of a property dispute regarding the propriety of certain -easements; The basic facts are undisputed. In 1982 Ruby P. Levy and Harry Scheinert conveyed a 60-foot-wide easement to Wayne R. Satterwhite. In 1984 H.E. Wills and Maria Wills conveyed *892 a separate 60-foot-wide easement to Wayne, Martha S. Satterwhite, Larry G. Satterwhite, and Sara J. Satterwhite (Martha, Larry, and Sara are hereinafter referred to collectively as “the Satter-whites”). The two easements (“the historical easements”) were within property that would eventually be developed into Saddle Lake Farms — “a land condominium with units/lots containing houses for sale, with platted streets and roadways.” The property upon which Saddle Lake Farms was developed is contiguous to a 60-acre parcel that was owned by Wayne and the Sat-terwhites, and the historical easements were intended to be access easements to the 60-acre parcel.
On June 5, 1995, Saddle- Lake Farms Association, Inc. (“the HOA”), recorded its articles- of incorporation, a survey of Saddle Lake Farms, a property description of Saddle Lake Farms, and a declaration establishing the neighborhood covenants for Saddle Lake Farms (“the incorporation documents”), and the HOA received a certificate of incorporation. Gerd Anderson was the president of the HOA. Per the incorporation documents, EnviroBuild, Inc., a property-development company, held the management rights of the HOA until private owners owned 75% of the units that composed Saddle Lake Farms. Anderson was also the president of Envi-roBuild.
In 1997 Satterwhite Enterprises, LLC (owned by Wayne and the Satterwhites),[1] and EnviroBuild entered into a joint-venture agreement to equally divide the profits and losses of developing Saddle Lake Farms. In 2001 Satterwhite Enterprises conveyed a 77.89-acre parcel to Enviro-Build. The deed, which appears in the record, conveyed a parcel within the area to become Saddle Lake Farms, subject to “easements of record! ],” and included an express condition that an access-and-utilities easement would be created in the future for access to Satterwhite Enterprises’ contiguous 60-acre parcel.[2]
On July 26, 2004, Anderson, on behalf of both EnviroBuild and the HOA, executed an easement document (“the easement document”), which purported to convey to Wayne and the Satterwhites a specifically identified 60-foot-wide “permanent ingress/egress and utilities easement over, across, and under the property formerly granted to EnviroBuild by Satterwhite Enterprises.” The easement document described an easement running across, among others, a lot identified in the record as Lot 208; the easement document was recorded. On July 26, 2004, Anderson, on behalf of the HOA, executed an “agreement for ingress egress easement” in which the HOA conveyed to EnviroBuild “perpetual use” of
“a permanent ingress-egress easement within the streets and roadways located in Saddle Lakes Farms Condominium which are more readily depicted and described as a common element in the condominium’s recorded plans. This easement is granted for the purpose of providing permanent access to and from all the real properties [ (sic) ] owned by *893 [EnviroBuild], which adjoins and is contiguous to Saddle Lake Farms.”
According to business letters contained in the record, 75% of the units of Saddle Lake Farms were owned by private owners by November 16, 2004; thus, on January 5, 2005, the management rights of the HOA transferred from EnviroBuild to the newly elected board of the HOA.
In 2005 EnviroBuild sold, among other lots, Lot 208, subject to any existing easement, to Rodney Byrd Millenium Properties, Inc. (“Millenium”). . The lot was surveyed, but the surveyor failed to discover the easement document, and Anderson, on behalf of EnviroBuild, executed a sworn statement indicating that no easements existed on the lot. Millenium contracted to build a house on Lot 208 for prospective buyers, Shane Sumrall and his wife, Kristina Sumrall. Due to their eventual discovery of the easement document, the Sumralls never purchased the house, and Millenium was thereafter unable to sell the house. Mutual Savings Credit Union (“MSCU”) eventually foreclosed upon the house and Lot 208.
On September 11, 2006, Millenium and the Sumralls filed in the Shelby Circuit Court a complaint against EnviroBuild, Wayne, Anderson, Stewart Title Guaranty Co., and Satterwhite Enterprises, which was assigned case no. CV-06-900038 (“the 06 action”). On May 15, 2007, the Satter-whites filed a complaint against Millenium, Rodney Byrd (the president of Millenium), the Sumralls, the surveyor of Lot 208, and the surveyor’s employer, which was assigned case no. CV-07-900173 (“the 07 action”). The circuit court granted MSCU’s motion to intervene in the 07 action on February 4, 2009; MSCU aligned itself with the Satterwhites.[3] The HOA was added as a defendant in the 07 action on October 10,2010.
On December 20, 2007, the circuit court entered an order consolidating the 06 action and the 07 action “for purposes of discovery and trial.” We discuss each action in turn.
’ The 06 Action — Appeal No. 21⅛01⅛8
On September 11, 2006, Millenium and the Sumralls filed a complaint against EnviroBuild, Wayne, Anderson, Stewart Title Guaranty Co., and Satterwhite Enterprises, asserting various causes of actions and requesting an order that would void the purported easement over Lot 208, quiet title to Lot 208, and vest ownership of Lot 208 in Millenium' or the Sumralls. EnviroBuild, Wayne,'Anderson, and Sat-terwhite Enterprises filed a motion seeking a dismissal of the complaint or, in the alternative, the entry of a summary judgment in the 06 action based on the arguments that Millenium had purchased Lot 208 “as is” in the lot-sale contract and that, under the doctrine of caveat emptor, Envi-roBuild had had ho duty to provide notice of the easement; therefore, they contended, Millenium could not have reasonably relied on Anderson’s misrepresentation in light of the recorded easement document. Millenium opposed the motion to dismiss the 06 action, asserting that an exception to the doctrine of caveat emptor applied *894 and that further discovery was necessary. On July 3, 2008, the circuit court entered a partial summary judgment in favor of En-viroBuild, Anderson, and Satterwhite Enterprises in the 06 action.
The circuit court determined that Envi-roBuild had granted Wayne and the Sat-terwhites — i.e.,- the owners of Satterwhite Enterprises — a permanent easement over a portion of Lot 208, that the easement document had been recorded, that, one year later, EnviroBuild had sold Lot 208 to Millenium, that Anderson had executed a sworn statement indicating that no easements existed on the lot, that Millenium had constructed a house on Lot 208 for the Sumralls, that the Sumralls had discovered that the easement document existed, and that Millenium had not sold the house to the Sumralls, The circuit court concluded that, although Anderson had made a false representation, the partial summary judgment in favor of EnviroBuild, Anderson, and Satterwhite. Enterprises was proper because Millenium had been on notice of the existence of the recorded easement document; thus, the circuit court concluded, Millenium could not have reasonably relied on Anderson’s false representation. The circuit court certified the partial summary judgment as a final judgment pursuant to Rule 64(b), Ala. R. Civ. P. Millenium filed a motion to alter, amend, or vacate the judgment, which was denied. Milleni-um did not file an appeal in the 06 action.
On March 20, 2014, the Satter-whites,' presumably on behalf of Satter-white Enterprises (see supra note 1), filed an appeal in the 06 action. Although the parties do not raise any argument regarding this court’s jurisdiction to consider appeal no. 2140148 (the Satterwhites’ appeal in the 06' action), “jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu,” Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987). See also Ex parte Smith, 438 So.2d 766, 768 (Ala.1983) (“Lack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu.”).
As an initial matter, we must, therefore,- consider whether the Satter-whites’ notice of appeal was timely filed so as to properly invoke the appellate jurisdiction of this court. See, e.g., Rudd v. Rudd, 467 So.2d 964, 965 (Ala.Civ.App.1985) (“The timely filing of the notice of appeal is a jurisdictional act.”). The' circuit court certified the partial summary judgment as a final judgment pursuant to Rule 54(b) on July 3,. 2008, and the Satterwhites filed their notice of appeal nearly, six years later. See Rule 4(a)(1), Ala.' R.App. P. (requiring a party to file a noticé of appeal “within 42 days (6 weeks) ‘of the date of the entry of the judgment or order appealed from”). Because the Satter-whites failed to timely file their notice of appeal, this court has no jurisdiction to consider their appeal; we therefore dismiss appeal no. 2140148. See Rule 2(a)(1), Ala. R.App. P. (“An appeal shall be dismissed if the notice of appeal was not timely filed to involve the jurisdiction of the appellate court.”). Moreover, even if the notice of appeal had been timely, Satter-white Enterprises — an entity owned, in part, by the Satterwhites — was a prevailing party. It is well established that only adverse rulings by a trial court are appeal-able. Nash v. Cosby, 574 So.2d 700, 701 (Ala.1990); Holloway v. Robertson, 500 So.2d 1056, 1059 (Ala.1986); and McCulloch v. Roberts, 290 Ala. 303, 276 So.2d 425 (1973). Accordingly appeal no. 2140148 is dismissed as untimely filed by a prevailing party.
*895 The 07 Action—Appeal No. 2040149
On May 15, 2007, the Satterwhites filed a complaint against Millenium, Byrd, the Sumralls, the surveyor of Lot 208, and the surveyor’s employer, asserting various causes of action and claiming that they had incurred substantial economic damage due to the loss of ingress and egress to the 60-acre parcel that is contiguous to Saddle Lake Farms on which they desired to develop a subdivision.[4] On February 4, 2009,. MSCU intervened in the action. On October 10, 2010, the HOA was added as a defendant. On June 11, 2012, the Satter-whites filed a motion for a summary judgment, alleging that the evidence demonstrating the existence of the historical easements and the easement document indicated the “legality” of their right to an easement and that no genuine issue of material fact existed. They attached Wayne’s affidavit, dated June 7, 2012, in which he testified that “[a]t no time did EnviroBuild, [the HOA (under Anderson’s management), Satterwhite Enterprises, or Wayne and the Satterwhites] vacate the historical easements.”
On August 17, 2012, the HOA filed a cross-motion for a summary judgment, in which it apprised the circuit court, for the first time, of certain pertinent facts. According to the HOA, all the roads in Saddle Lake Farms are privately maintained by the homeowners, and, the HOA alleged, the Satterwhites added the HOA as a defendant in order to “force” the HOA to provide an easement across Lot 17 in Saddle Lake Farms.
Regarding the historical easements, the HOA indicated that the Satterwhites had claimed “to have extended easements over and across all streets and roadways within the Saddle Lake Farms.” According to the HOA the Satterwhites had abandoned the historical easements because, as the owners of Satterwhite Enterprises, which is a party to the joint-venture agreement with EnviroBuild, the Satterwhites had been “aware of many houses, driveways, and connecting streets being built in the Saddle Lake Farms development over the course of several years at or about the approximate location of the [historical easements],” had not objected, and. had profited from those land sales.
Regarding the easement over Lot 208, the HOA indicated that the Satterwhites’ claim was based on a “purported conveyance,” which, the HOA asserted, Anderson, on behalf of EnviroBuild and the HOA, had had no authority to convey. The HOA pointed to Satterwhite Enterprises’ joint-venture agreement with EnviroBuild during the time when Anderson was. the president of both EnviroBuild and the HOA. *896 The HOA accused Anderson of executing the easement document in a method contrary to the requirements expressed in the incorporation documents even though the incorporation documents had been prepared by EnviroBuild. The HOA produced documentation demonstrating that Anderson had had no authority to grant the easement described in the easement document because the HOA’s bylaws forbid an encumbrance that is not approved for the “benefit of the condominium units/ lots.” Furthermore, the HOA asserted that the 60-acre parcel is not landlocked because, the HOA asserted, an existing road on property owned by the Satterwhites provides access to the 60-acre parcel. The HQA asserted that Anderson, as president of both the HOA and EnviroBuild, which was involved in a joint venture with Satter-white Enterprises, had engaged in impermissible self-dealing, had potentially violated specific provisions of the HOA’s bylaws, and had infringed on the homeowners’ “right to rely on the recorded [incorpo-. ration] documents.”
MSCU, which had intervened in the action and had aligned itself with the Satter-whites (see supra note 3 and accompanying text), filed a response to the HOA’s motion, in which it asserted that it owned Lot 208 and the house on Lot 208 and that it had entered into a contract to purchase Lot 17 for the Satterwhites so that the Satterwhites would own Lot 17 in fee. simple, which would create unimpeded access to the 60-acre parcel. Thus, MSCU asserted, a summary judgment in favor of any of the parties would favor MSCU. In other words, if the circuit court found in favor of the Satterwhites, the Satterwhites would no longer need an easement over Lot 208 due to MSCU’s agreement to purchase Lot 17 and, in the alternative, if the circuit court found in favor of the HOA, the Satterwhites would not have an easement over Lot 208.
On September 19, 2012, the circuit court entered a summary judgment in the 07 action against the Satterwhites based upon its determination that the easement document was invalid because Anderson, on behalf of EnviroBuild and the HOA, had not had the authority to convey the easement, noting specifically that the purported conveyance had violated certain provisions of the incorporation documents. Furthermore, the circuit court concluded that the Satterwhites were estopped from asserting that the historical easements remained valid because they had “watched and benefitted” as the development of Saddle-Lake Farms “did away with” the historical easements. The judgment reads: “This ruling disposes of all issues presented in this case.”
The Satterwhites filed a motion to vacate the September 19, 2012, summary judgment entered in the 07 action because, they argued, it conflicted with the circuit court’s July 3, 2008, partial summary judgment entered in the 06 action. The Sat-terwhites argued that Millenium had not appealed the partial summary judgment in the 06 action “validating” the purported easement across Lot 208 and that, by consolidating the 06 action with the 07 action, the circuit court’s determination as to the “validity” of the easement document was the law of the case in both actions. According to the Satterwhites, the doctrine of res judicata barred the entry of the summary judgment in the 07 action. Furthermore, they argued, the summary judgment entered in the 07 action had had the effect of impermissibly causing the 60-acre parcel that is contiguous to Saddle Lake Farms to be landlocked. On December 20, 2012, the circuit court entered an order setting aside the September 19, 2012, summary judgment entered in the 07 action and ordering the parties to supplement *897 their cross-motions for a summary judgment.
On October 17, 2013, the HOA filed a renewed motion for a summary judgment, in which it asserted that nearly one year had passed since the circuit court had set aside the September 19, 2012, summary judgment, that the Satterwhites had failed to supplement their motion for a summary-judgment, and that its motion for a summary judgment was due to be granted. MSCU filed an response in which it agreed that “some action” would benefit the parties. On February 10, 2014, after reconsidering the cross-motions, the circuit court entered a summary judgment in favor of the HOA by again concluding that the easement document, which had purported to grant an easement over lot 208, was void. The circuit court concluded that “[tjhe easement granted on July 26, 2004, and made the basis of this action is deemed void, set aside and held for naught.” The February 10, 2014, summary judgment also incorporated by reference the September 19, 2012, summary judgment, which, as indicated earlier, disposed of the Satterwhites’ claims regarding the validity of the historical easements. As noted earlier, Byrd and Millenium were never served and, thus, were never made parties to the 07 action, and the circuit court entered summary judgments in favor of the Sumralls, the surveyor, and the surveyor’s employer (see supra notes 3 and 4); therefore, the February 10, 2014, summary judgment disposing of the claims involving the remaining parties was a final judgment.
On March 20, 2014, the Satterwhites filed an appeal to our supreme court in the 07 action. The appeal was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1976. The Sat-terwhites do not ask this court to consider whether genuine issues of material fact exist such that the entry of the summary judgment in the 07 action was inappropriate. Instead, the Satterwhites seek our review of whether the circuit court erred, they say, by reversing its partial summary judgment in the 06 action four years after it was entered or by allowing the HOA to relitigate, invalidate, or attack an issue in the 07 action that was “decided” or “ratified and indemnified” in the 06 action. In their appellate brief the Satterwhites contend that “the doctrines of res judicata, collateral estoppel, judicial estoppel, and law of the case mandate” a reversal of the summary judgment entered in the 07 action. The Satterwhites also contend that the circuit court erred by concluding that they had abandoned the historical easements.
“Our standard of review in cases involving summary judgments is de novo; we apply the same standard as applied in the trial court. A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment ‘must make a prima facie showing that ... no genuine issues of material fact [exist] and' that [it] is entitled to [a] judgment as a matter of law.’ Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, ‘the burden then shifts to the nonmóvant to rebut the movant’s prima facie showing by “substantial evidence.” ’ Id. ‘Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can rea-. sonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). See West, 547 So.2d at 871 ..., and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 *898 (Ala.1989), for further discussion of the application of the summary judgment standard.”
Lee v. Burdette, 715 So.2d 804, 806 (Ala.Civ.App.1998).
Rule 42(a), Ala. R. Civ. P., provides:
“Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such-orders concerning proceedings therein as may tend'to avoid unnecessary costs or delay.”
Alabama law is well settled that consolidated actions maintain their separate identities, and separate judgments are to be entered in each action. Casey v. Casey, 85 So.3d 435, 439-40 (Ala.Civ.App.2011) (citing H.J.T. v. State ex rel. M.S.M., 34 So.3d 1276, 1278 (Ala.Civ.App,2009)). The circuit court consolidated the 06 action and the 07 action for purposes of discovery and trial, and it properly entered separate judgments in each action.
The judgment in the 07 action is not barred by the doctrines of res judicata, collateral estoppel (i.&, issue preclusion), or judicial estoppel for the simple reason that the HOA was not a party to the 06 action. Those doctrines require, among other elements, that .there be a substantial identity of the parties in both the first action and the second action. See Bullock v. Howton, 168 So.3d 1270, 1272 (Ala.Civ.App.2015)(regarding the elements of the doctrine of res judicata); Ex parte Smith, 683 So.2d 431, 433 (Ala.1996)(re-garding the elements of the doctrine of collateral estoppel); and Ex parte Jackson Hosp. & Clinic, Inc., 167 So.3d 324, 332 (Ala.2014)(regarding the elements of the doctrine of judicial estoppel).
For the same reason, the judgment in the 06 action did not become law of the case in the 07 action.
“Under the doctrine of the 'law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.”
Blumberg v. Touche Ross & Co., 514 So,2d 922, 924 (Ala.1987) (citing Alford v. Summerlin, 423 So.2d 482 (Fla.Dist.Ct.App.1982)). We are not presented with the “same parties” or.the “same case.” Moreover, the decision in the 07 action was predicated on facts that were not presented for review in the 06 action, namely, the facts contained in the HOA’s motion for a summary judgment.
The Satterwhites continue their argument by asserting that the BUA was in privity with, and had “identity of interests” with, EnviroBuild because Anderson was the president of both entities and Enviro-Build was a party in the 06. action, . The Satterwhites .argue that “[t]here is no doubt in this consolidated case that the [HOA] was in privity with [EnviroBuild].” Thus, according to the Satterwhites, the issue of the validity of the easement document could not be relitigated by the HOA in the 07 action because that issue had been litigated by EnviroBuild in the 06 action.
“' “Privity” is a flexible-legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his [or her] interests adequately-represented by someone with the same interests who is a party.’ ” Jim Parker Bldg. Co. v. G & S Glass & Supply Co., 69 So.3d 124, 132 (Ala.2011) (quoting EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1286 (11th Cir. *899 2004)); see also McDaniel v. Harleysville Mut. Ins. Co., 84 So.3d 106, 112-13 (Ala.Civ.App.2011). In the 06 action, Enviro-Build benefited from the circuit court’s conclusion that Millenium could not have relied, on Anderson’s false representation because the easement document,,had been recorded. The interests of the HOA were not adequately represented in the 06 action by EnviroBuild or Anderson, who purportedly acted on behalf of EnviroBuild and the HOA, because, unlike EnviroBuild, the HOA did not benefit from the circuit court’s conclusion in the 06 action. Instead, in the 07 action, the HQA’s position was that the easement purportedly granted to Wayne and the Satterwhites was detrimental to the HOA’s interests, was granted without notification to or the agreement of the HOA, and was contrary to certain provisions of the HOA’s incorporation documents.
Finally, the Satterwhites contend that the circuit court erred by concluding that the historical easements were invalid because, they assert,' there was no evidence indicating that they had abandoned or vacated the historical easements. An easement may be extinguished by abandonment upon proof of nonuse coupled with an act indicating,an intent to abandon the easement. Alabama Power Co. v. Daily, 31 Ala.App. 441, 443, 18 So.2d 142, 144 (1944); see also Western Union Tel. Co. v. Louisville & Nashville R.R., 206 Ala. 368, 89 So. 618 (1921); 63 Am.Jur. Proof of Fads 3d 519 § 1 (“The well-established rule is that abandonment of an .easement must be proved by showing a history of nonuse, coupled with a decisive act or omission by the easement holder that indicates a clear intent to abandon.” (footnote omitted)).
In this case the circuit court was presented with a deed demonstrating that Satterwhite Enterprises had conveyed the 77.86-acre parcel to EnviroBuild, subject to general language preserving any easements, Although the language of that deed is not entirely clear, the deed appears to convey the parcel that includes the. historical easements. At that point, Satterwhite Enterprises ... maintained. its right , fo use the historical easements. However, in its August 17, 2012, cross-motion for a summary judgment, the HOA asserted that Satterwhite Enterprises had not used the historical easements and that Satterwhite Enterprises had signaled its intent to abandon the historical easements when it participated in developing the platted streets in Saddle Lake Farms, allowed the sale of the lots in Saddle Lake Farms, and allowed the construction of houses and streets by individual homeowners in Saddle Lake Farms. The HOA argued that the Satterwhites, who are "the owners of Satterwhite Enterprises, had observed and had profited from the construction and the land sales. Therefore, the HOA shifted the burden to the Satterwhites to provide substantial evidence creating a genuine issue of material fapt regarding whether Satterwhite Enterprises had abandoned the historical easements. See Bass v. SouthTrust Bank of Baldwin Cnty., 538 So.2d 794, 797-98 (Ala.1989) (explaining that when the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue). The only contrary evidence we have located in the record is Wayne’s affidavit testimony, dated two months before the HOA’s cross-motion was filed, in which Wayne merely asserts that the historical easements had not been abandoned. Wayne’s testimony was not presented in response to the HOA’s cross-motion for a summary judgment, and it does not specifically refute the HOA’s assertions that the Satterwhites, as owners of Satterwhite Enterprises, had participat *900 ed in, had profited from, and had observed the sale of lands and the construction of houses and streets, which actions had demonstrated their intent to abandon the historical easements. Furthermore the Satterwhites failed to supplement their summary-judgment motion as ordered by the circuit court after they had succeeded in convincing the circuit court to enter an order setting aside its September 19, 2012, summary judgment in favor of the HOA. Therefore, we conclude that the Satter-whites failed to meet their burden of presenting substantial evidence that would create a genuine issue of material fact in response to the HOA’s cross-motion for a summary judgment. Bass, 538 So.2d at 797-98.
In conclusion, appeal no. 2140148 is dismissed as untimely filed by a prevailing party. In appeal no. 2140149, the circuit court’s judgment is affirmed.
2140148 — APPEAL DISMISSED.
2140149 — AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. We note that, throughout the litigation, Wayne and the Satterwhites, the Satterwhites, and Satterwhite Enterprises appear to have been referred to interchangeably. Based upon the record, this court, within the text of this opinion, has attempted to identify the appropriate parties; moreover, we have restyled appeal no. 2140148 to reflect the appropriate parties.

. We assume that Wayne and the Satter-whites conveyed the 60-acre parcel to Satterwhite Enterprises after its formation, although no evidence reflecting that conveyance is included in the record.

. MSCU has realigned itself with the HOA, which was added as a defendant in the 07-action on October 10, 2010, in appeal no. 2140149 and has submitted an appellee’s brief. On February 2, 2015, we requested letter briefs on the issue whether the claims of MSCU had been adjudicated. MSCU filed a letter brief on February 9, 2015, in which it asserted that “all of the parties and all of the issues ha[d] been properly ruled upon” in various’ summary-judgment orders. The appellants and the appellees in both appeals agreed with that assertion in their letter briefs, which, were also filed on February 9, 2015. On February 12, 2015, this court en-téred an order allowing the appeals to proceed.

. On March 26, 2015, this court requested letter briefs on the issue whether the claims against Byrd and Millenium had been adjudicated in the 07 action. The HOA, which was added as a defendant in the 07 action on October 10, 2010, responded that neither Mil-lenium nor Byrd has been served. The record supports the assertion of the HOA; therefore, neither was actually made a defendant in the 07 action. One of the requisites of personal jurisdiction over a defendant is “perfected service of process giving notice to [the] defendant of the suit being brought.” Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala.1983). See also Rule 4(f), Ala. R. Civ. P. ("When there are multiple defendants and the summons (or other document to be served) and the complaint have been sewed on one or more, but not all, of the defendants, the plaintiff may proceed to judgment as to the defendant or defendants on whom process has been served and, if the judgment as to the defendant or defendants who have been served is final in all other respects, it shall be a final judgment”). Moreover, on April 27, 2009, the circuit court entered a summary judgment in favor of the Sumralls. On July 22, 2009, the circuit court entered a summary judgment in favor of the surveyor of Lot 208 and the surveyor’s employer.