MOORE, Judge.
Carl Chamblee, Sr., an attorney, appeals from a judgment entered by the Etowah Circuit Court (“the trial court”) in favor of Paul Duncan and Deborah Ann Duncan. We affirm.

Procedural History

In January 2007, Chamblee, on behalf of four minor children (“the' children”), by and -through their mother, Kelly Bynum (“Kelly”), filed a complaint -against Paul Duncan (“Paul”) and Lurey Jeffery Bynum (“Lurey”) in the trial court (“the original complaint”),[1] which initiated civil-action no; CV-07-131 (“the original action”). According to the' Duncans’ brief on appeal, the original complaint alleged that Paul and Lurey had improperly cut timber from land that was owned by the' children. At the time Chamblee filed the original complaint, he also filed two lis pendens' notices on “any and all” real property owned by Paul in St. Clair County and in Etowah County, respectively.
Through a series of filings and amendments, the Duncans asserted a counterclaim against Kelly and the children and added Chamblee as a counterclaim defendant. In their second amended counterclaim, the Duncans alleged that the filing of the lis pendens notices had rendered the Duncans’ real property unmarketable and that, based on a variety of legal theories, they were entitled to .damages. It is undisputed that the Duncans paid a fee of $297 in the original action for the filing of their counterclaim.
*684 Eventually, the trial court dismissed the counterclaim against Kelly and the children, leaving Chamblee as the only remaining counterclaim defendant. On January 24, 2014, Chamblee filed a “motion to sever” the Duncans’ counterclaim against him from the original action. In his motion, Chamblee argued that the counterclaim should be tried separately from the claims in the original complaint because the claims asserted in the original complaint were to be tried before a jury, while the counterclaim was to be tried without a jury. The Duncans consented to the. motion on the condition that “Chamblee is assessed any and all court costs resulting from his motion to sever and obtaining a new docket number.” On February 7, 2014, the trial court granted the motion. The trial .court later entered an order in the original action stating that the Duncans’ counterclaim against Chamblee had been “severed from the remainder of [the original action],” directing the trial-court clerk “to establish a separate civil action number and file for the severed claim,” setting that claim for a nonjury trial, and setting “the remainder of [the original action]” for a jury trial. The clerk assigned the Dun-cans’ counterclaim against Chamblee’ a new civil-action number, CV-07-131.01 (“the severed action”).
On October 12, 2014, Chamblee filed, in the severed action, a third-party complaint, mislabeled as a “cross-claim,” against Kelly and the children, one of whom, Jeffery Hunter Bynum (“Jeffery”), had reached the age of majority. In his third-party complaint, Chamblee asserted that, because' he had acted as the attorney for Kelly and the children when he had filed the original complaint and the referenced lis pendens notices, Chamblee was entitled to common-law indemnification from Kelly and the children in the event he was held liable to the Duncans in the severed action.[2] Chamblee did not serve Kelly and the children with a summons and the third-party complaint, but he did certify that he had served the third-party complaint on various attorneys, including attorneys that had represented or acted as guardians ad litem for the children in the original action, by United States Mail. Contemporaneously with the filing of the thirdrparty complaint, Chamblee filed a motion asserting that “the typical procedures” for adding a new party as a “cross-defendant” did not apply because, he said, Kelly and the children were parties to the original action. Nevertheless, Chamblee asserted that Kelly and the children “need[ed] to be brought into th[e severed action] by order of court,” and he requested the trial court to enter an order “to bring the aforesaid five persons into th[e severed] action so that they might be required to respond,, according to law; to [Chamblee’s] cross-claim.”[3] The Duncans opposed Chamblee’s motion requesting that the trial court add Kelly and the children as “cross-defendants” because, the Duncans asserted, Chamblee’s “cross-claims” were untimely. The trial court denied Chamblee’s motion.
Notwithstanding the trial court’s refusal to enter an order expressly making Kelly and the children parties in the severed action, guardians ad litem for the three children who were still minors appeared in the severed action and moved the trial *685 court to dismiss Chamblee’s claims against the minor children. The trial court granted the minor children’s motion to dismiss. Neither Kelly nor Jeffery ever appeared in the severed action.
On November 21, 2014, after a nonjury trial in the severed action, the trial court entered a judgment in favor of the Dun-cans and against Chamblee. The trial court awarded Paul compensatory damages in the amount of $10,000 and awarded Deborah Duncan (“Deborah”) compensatory damages in the amount of $5,000. The trial court also stated that clear and convincing evidence had been presented indicating that Chamblee was guilty of “wanton and intentional conduct” in the filing of and the refusal to terminate the lis pen-dens notices. Accordingly,. the trial court awarded Paul punitive damages in the amount of $15,000 and awarded Deborah punitive damages in the amount of $7,500. Chamblee timely appealed. .

Facts

Paul testified that, sometime in 2007, while he was cutting timber in St. Clair County pursuant to a purported timber deed he had been given, Chamblee approached him and claimed that Duncan did not have, a right to cut the timber. In February 2007, Chamblee sent a letter to Paul informing him that Chamblee had filed the original complaint against Paul and that he had, in addition, filed a lis pendens notice against any and, all of Paul’s real property located in St. Clair County. Thereafter, Paul hired an attorney, and, Paul asserted, he decided to sell some land he owned in Etowah County in order to pay the attorney’s fees he anticipated he would owe.
Brad Cornett, the attorney who represented the Duncans in the original action, testified during the trial in the severed action that, when Paul was sued, he; as the Duncans’ counsel, had received a copy of the original complaint and the lis pendens notice that had been filed in St. ■ Clan-County. Cornett testified that he had suspected that the lis pendens notice was invalid under applicable law because it was against real property that was not the subject matter of the original action. He testified that it had taken him only 35 minutes of researching the issue to reach that conclusion.
Cornett testified that he had sent Cham-blee a letter via certified mail on March 6', 2007, which Chamblee admitted he had received, demanding that Chamblee terminate the lis pendens notice directed at the Duncans’ real property in St. Clair County. According to Cornett, the letter specifically explained in detail why the lis pendens notice was improper. Because Cornett did not receive a response to his letter, he sent Chamblee an additional letter on May 17, 2007, again stating that the lis pendens notice was improper. ■
In September or October 2007, Roseoe Johnson, a title agent for a lender in Gadsden, performed a title search regarding real property that the Duncans owned in Etowah County, which the Duncans had decided to sell. According to Johnson, his title search revealed that a lis pendens notice had been filed “against all of the property that [the Duncans] owned in [Etowah] county.” Johnson testified that he had informed Cornett of the additional lis pendens notice. Because the Duncans had recently, scheduled. a closing on the sale of the Etowah County property, Cor-nett filed an emergency motion in the original action requesting the trial court to quash both the lis pendens notice filed in Etowah County and the lis pendens notice filed in St. Clair County.
Although Chamblee filed an opposition to the motion to quash the lis pendens notices, he conceded in that opposition that both of the notices were improper and *686 invalid. Nevertheless, Chamblee stated in his opposition that he had decided to not terminate the lis pendens notices when he received the letters from Cornett because, he claimed, he had “reasoned that he was being called upon to act upon a void or invalid document [i.e., the lis pendens no-, tices]” and, therefore, had “declined to act on such futile or fruitless matter.” On or about November 1, 2007, the trial court in the original action entered orders quashing both lis pendens notices. The orders specifically acknowledged that Chamblee had conceded that the notices were invalid. Although the Duncans’ motion to quash the lis pendens notices was not heard before the originally scheduled real-estate closing on the sale of the Duncans’ Etowah County property and, therefor, the closing had tq be canceled, it is undisputed that the Duncans eventually were able to complete the sale of that property.
Cornett, who, at the time of the trial in the severed action, was a member of the Alabama State Bar’s committee charged with the enforcement of the Alabama Rules of Professional Conduct, testified that, in his opinion, Chamblee’s refusal to terminate .the lis pendens notices was an intentional and wanton violation of the duties Chamblee owed. to the. court, to opposing counsel, and to the opposing parties.
Paul testified at trial in the severed action that he had started to suffer chest pains when he discovered that Chamblee had filed a lis pendens notice against the Duncans’ real property in St. Clair County. He testified that his pain had worsened and that he had developed numbness in his left arm after he had discovered that a lis pendens notice had been filed regarding the Duncans’ property in Etowah County. Hemant Sinha, Paul’s physician, testified during the trial that Paul had- been hospitalized for two - days in November 2007 because of chest and arm pain. Dr. Sinha testified that, in his opinion, Paul’s medical problems were caused by stress stemming from Chamblee’s filing of the lis pendens notices and the trouble the Duncans had had in selling the Etowah County property. Evidence of medical expenses incurred by Paul was submitted to the trial court.
Deborah testified at trial in the severed action that Paul’s reputation in the community had been diminished because of the problems resulting from the filing of the lis pendens notices.. She testified that, like her husband, she also had suffered stress and embarrassment from the fact that the lis pendens notices had been filed against her property. Deborah also testified that she had suffered anxiety because of Paul’s medical problems. ■
Cornett testified that he had billed the Duncans a total of $3,315.80 in fees and expenses for his efforts in having the lis pendens notices quashed.

Standard of Review

' “' “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly " unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quotin g Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incor *687 rect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).

Analysis

I. Jurisdiction
A. Failure to Pay an Additional Filing Fee
On appeal, Chamblee first asserts that the trial court’s judgment is void. In support of that assertion, Chambleé points out that the trial-court clerk did not collect a filing fee when the severed action was docketed and assigned a new civil-action number. He argues that, “[i]f nó filing fee was paid, then the act Of the [trial-court clerk] in establishing [the severed action], that is, CV-2007-131.01, was contrary to law and [the] same is null and void as a matter of law.” The Duncans, on the other hand, point out that they paid a filing fee when .they filed their counterclaim in the original action, and they argue that no additional fee was owed when, their counterclaim was severed. We agree with the Duncans.
As an initial matter, we conclude that, in his “motion to sever,” Chamblee requested only a separate trial of the counterclaim under Rule 42(b), Ala. R. Civ. P.,[4] and not a complete severance of the counterclaim under Rule 21, Ala. R. Civ. P.[5] See Key v. Robert M. Duke Ins. Agency, 340 So.2d 781, 783 (Ala.1976) (discussing distinction between a motion for a separate trial and a motion for a severance). However, the parties elected to treat the motion as one seeking a Rule 21 severance, and they acquiesced in the trial court’s orders severing the counterclaim and assigning the counterclaim a new civil-action number. See Stephens v. Fines Recycling, Inc., 84 So.3d 867, 874 n. 4 (Ala.2011) (“[W]hen a valid severance under Rule.21[, Ala. R. Civ. P.,] occurs, the clerk of the trial court then dockets those severed claims as a separate case with a new civil-action number.”).
“Of course, ‘[p]arties may agree to try their case upon a theory of their own choosing and their agreements will be binding.’ Cotton v. Terry, 495 So.2d 1077, 1080 (Ala.1986). In our role as an appellate court, we review a case based exclusively on the record as compiled in the trial court, and we will not fault or overrule a trial judge based on matters not placed of record before the trial judge. ‘It is well established that this Court will not consider a case oh a theory different from that on which it was tried below.’ Kmart Corp. v. Bassett, 769 So.2d 282, 284 n. 2 (Ala.2000). Accordingly, our review, and resulting rulings, in this case are limited to the record as the parties chose to constitute it.”
Lewis v. Oakley, 847 So.2d 307, 311 (Ala.2002). Accordingly, for the purposes of opr analysis of the filing-fee issue, we as *688 sume that the trial court properly severed the counterclaim under Rule 21.
When the Duncans filed their counterclaim in the original action, they were assessed a filing fee pursuant to § 12-19-71(8), Ala.Code 1975, although the payment of that filing fee was not a prerequisite to the trial court’s exercise of jurisdiction. See Espinoza v. Rudolph, 46 So.Sd 403, 414 (Ala.2010) (holding that a trial court obtains jurisdiction over a counterclaim when it is filed, regardless of whether the applicable filing fee has been paid). No statute or rule expressly states that, when a counterclaim is severed from an original action, an additional filing fee is owed. We note that Rule 7, Ala. R. Jud. Admin., provides that “[a]ny filing for which there is no express cost under the consolidated fee structure [set out in § 12-19-71, Ala.Code 1975,] shall be treated as an original filing for cost purposes unless the payment of a docket fee is specifically waived by law.” According to the Comment to Rule 7, “[t]he words ‘any filing’ in this rule have, reference to the words ‘cases filed’ in Ala.Code 1975, [§ ] 12-19-71, and should be read in conjunction with that Code section.” See also Rule 5(e), Ala. R. Civ. P. (“The filing of papers with the court as required by these rules shall be made by filing them with , the clerk of the court....”); and Rubin v. Department of Indus. Relations, 469 So.2d 657, 658 (Ala.Civ.App.1985) (“ ‘[A] pleading or other paper may be said to have been duly filed when it is delivered to the proper filing officer.’ ” (quoting Covington Bros. Motor Co. v. Robinson, 239 Ala. 226, 229, 194 So. 663, 667 (1940))). We consider the filing of the counterclaim to be the operative “filing” in this case and not the later severance of that counterclaim, which did not require or constitute another “filing” within the contemplation of Rule 7. Accordingly, we conclude that Rule 7 did not require the Duncans to pay an additional filing fee when their counterclaim against Chamblee was severed from the original action.
In Opinion of the Clerk No. 45, 526 So.2d 584 (Ala.1988), the clerk of our supreme court answered two inquiries submitted by the Administrative Director of Courts regarding filing fees. The first question was as follows:
“[The Administrative Director’s] first question arises in the situation where a defendant in district court files a counterclaim seeking relief beyond the jurisdictional limits of the district court. If the district judge orders that the counterclaim should properly be tried separately in the circuit court, is the circuit clerk authorized to collect the filing fee otherwise prescribed for circuit court civil cases by § 12-19-r71[, Ala.Code 1975]?”
526 So.2d at 585. The clerk of the supreme court answered the question in the affirmatiye:
“My opinion is that the filing fee is due to be prepaid by the party who filed the counterclaim in district court. That is, before the circuit clerk dockets the circuit court case, the filing fee should be paid just as if the district court coun-terclaimant had filed, as plaintiff, an original complaint in circuit court. If the district judge had ordered the counterclaim stricken for lack of subject matter jurisdiction in the district court, the counterclaimant would have had to file a new complaint in circuit court, and such a filing would obviously have required a circuit court filing fee.”
526 So.2d at 585-86.
The second question considered in Opinion of the Clerk No. 45 was as follows:
“In the second situation posed by [the Administrative Director], a judge orders one or more parties or claims severed pursuant to Rule 21, [Ala.] R. Civ. P. *689 Where a ‘true’ severance under Rule 21 is ordered and the clerk dockets a separate case with a new civil action number, is an additional filing fee required?”
526 So.2d at 586. The clerk also answered this question in the affirmative:
“[A] filing fee should be prepaid by the party proceeding as plaintiff in the severed action when a party or claim is validly severed pursuant to Rule 21, [Ala.] R. Civ. P.
[[Image here]]
, Because severed claims become entirely independent actions, it is my opinion that an additional filing fee is required when a party or claim is' severed pursuant to Rule 21. Regardless of whether the court acts on its own initiative or on motion of a party, the filing fee should be prepaid by the party proceeding as plaintiff in the separate action. Since a severed claim becomes a separate and independent case for purposes of finality of judgment and appellate review, there is no logical reason to view the claim as part of the original case for filing fee purposes.”
Id. (footnote omitted).
We note that, when Opinion of the Clerk No. 45 was issued in 1988, there was no fee for the filing of a counterclaim set out in the consolidated fee structure in § 12-19-71. It was not until 2004, when the legislature amended § 12-19-71, that clerks were specifically statutorily authorized to collect fees for the filing of counterclaims. See Ala. Acts 2004, Act No. 2004-636. Although not expressly stated in Opinión of the Clerk No. ⅛5, it appears that, because there was no specific fee in the consolidated fee structure applicable to the transfer of a counterclaim from district court to circuit court or to a Rule 21 severance of a counterclaim, the supreme-court clerk concluded that Rule 7, Ala. R. Jud. Admin., called for the payment of the fee typically applicable to cases originally filed in the circuit courts: See generally Opinion of the Clerk No. 35, 397 So.2d 545, 546 (Ala.1981) (opining that, based on Rule 7, Ala. R. Jud. Admin., a filing fee is due when a case is transferred from smallrdaims court to district court and stating that “[t]here is no express cost under the consolidated fee structure for a filing which is effectuated in the district court by the transfer of a case from the small claims docket”). Nothing in the clerk’s opinion could be read as, intending that a court should collect two fees for .administering the same counterclaim just, because that counterclaim is later, severed from the original action.
In Opinion of the Clerk No. 54, 982 So.2d 1059 (Ala.2007), the clerk of the supreme court relied on Opinion of the Clerk No. 45 in opining that an additional filing fee should be assessed when a court severs a retaliatory-discharge claim from a workers’ compensation action for which a filing fee had already been collected. That case did not involve a counterclaim, but, to the extent that it is analogous to the present situation in that it involves the collection of two filing fees, we note that the clerk did not consider the ramifications of the 2004 amendments to § 12-19-71 on the reasoning employed in Opinion of the Clerk No. k5. Moreover, we are not required to follow opinions of the clerk of our supreme court, which are merely advisory in nature. See 12-2-19(d), Ala.Code 1975 (authorizing the Clerk of the Alabama Supreme Court to give “advisory” opinions to state 'officials regarding the interpretation of rules promulgated by the supreme court); compare § 36-15-9, Ala.Code 1975 (authorizing advisory opinions by attorney general), and Alabama Dep’t of Pub. Safety v. Barbour, 5 So.3d 601, 609 (Ala.Civ.App.2008) (following long-established rule that advisory opinions of attorney general are not bind *690 ing upon the courts). Given our own interpretation of Rule 7, and its interplay with § 12-19-71 as amended, we decline to follow Opinion of the Clerk No. 45.
In a 2011 case, Stephens v. Fines Recycling, Inc., supra, our supreme court also stated in a footnote:
“[A]s noted in Opinion of the Clerk No. 54, [982 So.2d 1059 (Ala.2007),] when a valid severance under Rule 21[, Ala. R. Civ. P.,] occurs, the clerk of the trial court then dockets those severed claims as a separate case with a new civil-action number, which requires an additional filing fee by the plaintiff in the severed action. 982 So.2d at 1061 (citing Opinion of the Clerk No. 45, [526 So.2d 584 (Ala.1988)], as referenced in the Committee Comments Adopted February 13, 2004, to Rule 21, Ala. R. Civ. P.). The record before us does not suggest, and [the plaintiffs] do not allege, that the clerk of the trial court docketed the allegedly, severed equitable counterclaims with a new civil-action number or that [the defendant] was required to pay a separate filing fee as to those claims.”
84 So.3d at 874 n. 4 (emphasis added). However, our supreme court did not consider the context in which Opinion of the Clerk No.45 and Opinion of the. Clerk No. 54 had been decided or that the assumptions upon which Opinion of the Clerk No. 45 had been based no longer applied. - Regardless, in Stephens, the supreme court determined that the counterclaims had not been severed, so the suggestion in Stephens that an,additional filing fee could be owed when a counterclaim is severed from an original action was only dicta, which this court would be bound to follow only if it were plainly indicative of how the -supreme court would rule in the instant case. See United States Steel Corp. v. Wood, 40 Ala.App. 431, 438-39, 114 So.2d 533, 540 (1959), reversed on other grounds, 269 Ala. 5, 114 So.2d 551 (1959). In consideration of the foregoing analysis, we do not believe our supreme court would hold that an additional filing fee must be paid upon severance of a counterclaim.
Furthermore, > we conclude that, even if an additional filing fee had been required, its nonpayment would not have deprived the trial court of subject-matter jurisdiction. In Espinoza, supra, our. supreme court explained that the language of § 12-19-70(a), Ala.Code 1975, provides for the payment.of a filing fee “ ‘at the time a complaint is filed in circuit court,’” thus making payment of a filing fee with a complaint a prerequisite jurisdictional act. 46 So.3d at 413 (emphasis omitted). However, no language in § 12-19-70(a) or § 12-19-71 dictates that a filing fee must be paid upon the filing of a counterclaim, which, once delivered to the clerk, becomes a part of the action over which the court already has jurisdiction. 46 So.3d at. 414. Likewise, § 12-19-70(a) and .§ 12-19-71 do not address severance of a counterclaim, much less provide that a filing fee should be paid at the time of the severance as a jurisdictional act. In the absence of specific statutory language to the contrary, the severance of the counterclaim did not divest the trial court of the subject-matter jurisdiction it was already exercising'over the counterclaim.
We hold that the Duncans were not required to pay an additional filing fee in the severed action and that the alleged failure to pay such a fee did not deprive the trial court of subject-matter jurisdiction to. adjudicate the severed action. Hence, the judgment of the trial court in the severed action is not void.
B. Finality of the Trial Court’s Judgment
Chamblee next argues that this court does not have jurisdiction over his appeal because, he claims, the trial court’s judg *691 ment was not final. See generally Ex parte Wharfhouse Rest. & Oyster Bar, Inc., 796 So.2d 316, 320 (Ala.2001) (indicating that, without a final judgment, an appellate court does not have jurisdiction to consider an appeal). “A final judgment that will support an appeal is one that puts an end to the proceedings between the parties to a case and leaves nothing for further adjudication.” Id.
According to Chamblee, the trial court’s judgment in favor of the Duncans was not .final because, he claims, his “cross-claims” against Kelly and Jeffery are still pending. It has long been the law that substance, not nomenclature, is “the determining factor regarding the nature of a party’s pleadings or motions.” Eddins v. State, 160 So.3d 18, 20 (Ala.Civ.App.2014). Rule 13(g), Ala. R. Civ. P., provides:
“A .pleading may state as a cross-claim any claim by one party against a co-party arising opt of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.”
Rule 13(g) did not apply in this case because, once the counterclaim was severed under Rule 21, the only parties to the severed action were the Duncans and Chamblee. See Key v. Robert M. Duke Ins. Agency, 340 So.2d 781, 783 (Ala.1976) (“When, however, a claim is severed from the original action, as authorized by Rule 21, [Ala. R. Civ. P.], a new action is created, just as if it had never been a part of the original action.”). After the severance, Kelly and the children were, not “co-parties” against whom Chamblee could ;file a cross-claim ;under Rule 13(g).
In the operative pleading,- Chamblee sought indemnification from Kelly and the children, strangers to the severed action, asserting that they should pay any damages recovered by the Duncans against Chamblee.. Rule 14(a), Ala. R. Civ. P., provides, in pertinent part:
“At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be Imble to the third-party plaintiff for all.or.part of the plaintiffs claim against the third-party plaintiff.”
(Emphasis added.)
“The province of a third party claim is therefore. limited to instances of contractual indemnification from a claim or the indemnification that flows from circumstances where the defending party is entitled to stand in the shoes of claimant if the defending party is liable to the claimant.” 1 Champ Lyons, Jr., and Ally Windsor Howell, Alabama Rules of Civil Procedure Annotated § 14.1 (4th ed.2004). By the above definitions, Chamblee filed a third-party complaint against Kelly and the children.
Rule 14(a) specifically provides that a third-party, plaintiff. must serve .a summons, along with the third-party complaint, upon any third-party defendant who is “not a party to the action.” Because Kelly and Jeffery were not parties to the severed action, unless they voluntarily appeared and thereby waived service, Cham-blee had to serve them-with a summons and the third-party complaint “as required by Rule 4; [Ala. R. Civ. P.].” Gray v. Gray, 359 So.2d 414, 415 (Ala.Civ.App.1978); see also E.H. Smith & Son Elec. Contractors, Inc. v. Springdale Mall Joint Venture, 592 So.2d 574 (Ala.1992). Chamblee does not *692 dispute that he did not satisfy the service-of-process requirements for bringing in third parties pursuant to Rule 14(a).
Recently, in Satterwhite v. Rodney Byrd Millenium Properties, Inc., 180 So.3d 890 (Ala.Civ.App.2015), this court held that the failure to adjudicate claims against defendants who have not been served does not affect the finality of a judgment, stating as follows:
“One of the requisites of personal jurisdiction over a defendant is ‘perfected service of process giving notice to [the] defendant of the suit being brought.’ Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala.1983). See also Rule 4(f), Ala. R. Civ. P. (‘When there are multiple defendants and the summons (or other document to be served) and the complaint have been served on one or more, but not all, of the defendants, the plaintiff may proceed to judgment as to the defendant or defendants on whom process has been served and, if the judgment as to the defendant or defendants who have been served is final in all other respects, it shall be a final judgment.’).”
180 So.3d at 895 n. 4. Because Kelly and Jeffery were never served in the severed action, the trial court’s alleged failure to adjudicate Chamblee’s claims against those individuals does not render the trial court’s judgment nonfinal.
II. Liability
Against Chamblee, the Duncans alleged claims of abuse of process, malicious prosecution, negligence, wantonness, slander of title, and civil conspiracy. All of the Duncans’ claims were based on their assertion that Chamblee had improperly filed, and had refused to withdraw, the lis pen-dens notices.
It is clear from the language of § 35-4-131(a), Ala.Code 1975, that lis pendens notices can be filed regarding real property that is the subject of litigation:
“When any civil action or proceeding shall be brought in any court to enforce any lien upon, right to or interest in, or to recover any land, ... the person ... commencing such action or proceeding ... shall file with the judge of probate of each county where the land or any part thereof is situated a notice containing the names of all of the parties to the action or proceeding, ... a description of the real estate and a brief statement of the nature of the lien, writ, application, or action sought to be enforced.”
(Emphasis added.) See also Willis v. Lewis, 25 Ala.App. 369, 370, 148 So. 330, 331 (1933) (“The doctrine of lis pendens is for the purpose of preserving the property involved in the suit....”); and Ex parte State Dep’t of Revenue, 886 So.2d 817, 821 (Ala.Civ.App.2003) (“‘The sole purpose of a lis pendens notice is to afford notice to a bona fide purchaser who might purchase the property during the pendency of the action.’ Although a lis pendens is only a notice of the pending litigation affecting title to real property, ‘it renders title unmarketable and therefor[e] effectively prevents the property’s transfer until the litigation is resolved or the lis pendens is expunged.’ ” (citations omitted)).
It is undisputed that title to the Dun-cans’ real property in St. Clair County and in Etowah County was not the subject of the original action. It is clear that Cham-blee filed the lis pendens notices not because his clients claimed an interest in the Duncans’ property, but because they desired to enforce; via execution on the Dun-cans’ property, any possible future judgment they might recover in the original action. Indeed, the lis pendens notices themselves state that they were intended “[f]or the enforcement and collection of any judgment which may be rendered in *693 [the original action].” Accordingly, Cham-blee candidly acknowledges in his brief to this court that the lis pendens notices were not valid under § 35^4-131(a).
Although Chamblee acknowledges that the Duncans asserted against him claims of abuse of process, malicious prosecution, negligence, wantonness, and slander of title, Chamblee offers significant argument only with respect to the slander-of-title claim and only limited and legally unsupported arguments as to the malicious-prosecution and negligence claims. See Rule 28(a)(10), Ala. R. Civ. P.; and K.D.H. v. T.L.H., 3 So.3d 894, 898 (Ala.Civ.App.2008) (failure to comply with Rule 28 constitutes waiver of argument on appeal). Chamblee essentially ignores the Duncans’ other claims because, according to Chamblee, the Duncans’ counterclaim was “basically a ‘slander-of-title’ claim or action.” Relying exclusively on that premise, Chamblee does not provide this court with any authority for the proposition that the Dun-cans could not base their other theories of liability on Chamblee’s actions. Cf. Folmar v. Empire Fire & Marine Ins. Co., 856 So.2d 807, 811 (Ala.2003) (Harwood, J., concurring specially) (implying that party placing cloud on title to real property could be liable under alternative legal theories other than slander of title).
Although the trial court awarded the Duncans punitive damages based, in part, on its finding that Chamblee had acted wantonly, the trial court did not specify any basis for its liability determination. “When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court’s order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue in the appellant’s principal brief constitutes a waiver with respect to the issue.” Fogarty v. Southworth, 953 So.2d 1225, 1232 (Ala.2006). “This waiver, namely, the failure of the appellant to discuss in the opening brief an issue on which the trial court might have relied as a basis for its judgment, results in an affirmance of that judgment.” Soutullo v. Mobile Cnty., 58 So.3d 733, 739 (Ala.2010) (construing Fogarty). Thus, even if the trial court erred in finding that Chamblee had slandered the Dun-cans’ title, an argument with which we do not necessarily agree, we still cannot reverse the judgment on that basis.
III. Damages
A. Compensatory Damages
Chamblee next apparently suggests that the Duncans did not suffer any damages because of Chamblee’s filing and refusal to terminate the lis pendens notices. The Duncans, however, offered evidence indicating that they both had suffered mental anguish, that Paul had incurred medical expenses as a result of the stress caused by Chamblee’s actions, that the Duncans had incurred legal fees in having the lis pendens notices quashed, and that Paul’s reputation in the community had been affected. With the exception of mental anguish, Chamblee does not specifically argue that the Duncans could not recover for those injuries. See K.D.H. v. T.L.H., supra.
As for mental anguish, Chamblee argues only that the Duncans were not entitled to damages for mental anguish because, he asserts, they did not sustain any physical injury and were not placed in the “zone of danger.” In Brown v. First Federal Bank, 95 So.3d 803, 818 (Ala.Civ.App.2012), however, this court recognized that damages for mental anguish are recoverable in wantonness cases, regardless of whether the plaintiff has suffered a physical injury or was placed in an immediate risk of such injury. As noted, Cham-blee has not met his burden of demonstrating that the trial court erred if it entered a *694 judgment in favor of the Duncans based on their claim, of wantonness. Accordingly, we cannot reverse the trial court’s award of compensatory damages based on Chamblee’s lack-of-physieal-injury/zone-of-dan-ger argument.
B. Punitive Damages
Finally, Chamblee asserts , on appeal that the trial court erred in awarding the Duncans punitive damages because, Chamblee claims, they did not satisfy their burden under § 6-11-20, Ala.Code 1975, which provides:
“(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, [Ala.Code 1975,] other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to .the plaintiff. . Nothing contained .in this article [i.e., § 6-11-20 through § 6-11-30] is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama.
“(b) As used in this article, the following definitions shall apply:
“(1) Fraud. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.
“(2) Malice. The intentional doing of a wrongful act without just cause or excuse, either:
“a. With an intent to injure the person or property of another person or entity, or .
“b. Under such circumstances that the law will imply an'evil intent.
“(3) Wantonness. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others,
“(4) Clear and convincing evidence. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of. the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.
“(5) Oppression. Subjecting a person to cruel and unjust hardship in conscious disregard of that person’s rights.”
By 'his own admission, Chamblee consciously and intentionally refused to withdraw the lis pendens notices after he had determined that they had been improperly filed. Therefore, the trial court did not err in determining that Chamblee had consciously or deliberately engaged in malice, wantonness, or oppression, as those terms are defined in § 6-ll-20(b). Thus, we see no basis on which to reverse the trial court’s award of punitive damages.
Based on the foregoing, the trial court’s judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. The record does not contain a' copy' of the original complaint, but the parties agree that it was filed.

. Chamblee also asserted that he held a statutory lien against property owned by Kelly and the children.

. Chamblee’s motion was styled as one requesting the trial court to “align and/or realign” Kelly and the children as parties, but the substance of that motion did not make a request to realign any parties. Rather, Cham-blee requested the trial court to enter an order making Kelly and the children parties to the severed action.

. Rule 42(b) provides:
"Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim,'Counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Article 1, Section 11 of the Alabama Constitution of 1901.”

. Rule 21 provides:
. "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or' of its own initiative at any stage of the action and on such terms as are just. Any. claim against a party may . be severed and proceeded with separately,”